ELSIE JEAN HONICK, Administratrix of the Estate
of Lottie L. Beals *v.* PEGGY LAVERN
WALDEN AND HOMER S. WALDEN

[No. 231, September Term, 1970.]

*Decided January 11, 1971.*

The cause was argued before MURPHY, C.J., and ORTH, MOYLAN, and POWERS, JJ.

*Michael L. Schwartz* for appellant.

*Robert P. Conrad,* with whom was *William F. McDonald* on the brief, for appellees.

MOYLAN, J., delivered the opinion of the Court.

On Friday, February 2, 1968, at approximately 2:30 A.M., on Compass Road in Baltimore County, an automobile driven by Plaintiff Homer S. Walden in which his wife, Peggy L. Walden, co-plaintiff, was a passenger was struck in the rear by an automobile driven by Lottie L. Beals. Shortly after the impact, Mrs. Beals came running out of her automobile to Plaintiffs' car saying, "Somebody help me" and then went back to her automobile, again struck Plaintiffs' car, and drove off around the right side of it. The Plaintiff Homer S. Walden thereafter drove his wife to their home, approximately one block from the scene of the accident, and Plaintiff Peggy L. Walden was transported to the hospital. The Plaintiffs brought a suit against Mrs. Beals in negligence for damages including loss of consortium. Before the trial, Mrs. Beals died from unrelated causes, and her daughter, Elsie Jean Honick, administratrix of her estate, was joined as a defendant.

At the trial, the Defendant attempted to prove that the striking of Plaintiffs' automobile was an intentional act on the part of Mrs. Beals to solicit help while she was being stabbed by a passenger in her automobile and, therefore, that the suit in negligence was improper.

Officer Richard Reese, of the Essex Police Station, who investigated the accident, called on behalf of the Plaintiffs, after testifying on direct examination that Mrs. Beals admitted in traffic court that she was driving at the time of the accident, testified on cross-examination that Mrs. Beals told the judge in traffic court that she intentionally struck Plaintiffs' car to attract attention and get help because she was being stabbed in the stomach by a

passenger in her car. He further stated that on direct examination he had been testifying from the police accident report. Plaintiffs' objection was sustained to Defendant's attempt to have the police report introduced into evidence. Officer Reese further testified that information on the accident report as to how the accident occurred was furnished by Plaintiff Homer S. Walden and other officers who talked to Mrs. Beals. The court permitted Officer Reese to testify from the accident report as to statements made to him by Mr. Walden but would not permit him to testify as to statements made by Mrs. Beals to other officers. On redirect examination, Officer Reese testified that Mr. Walden told him he was struck in the rear by Mrs. Beals' car.

Hazel Shuler testified on behalf of the Defendant that she lived five, six, or seven blocks from the scene of the accident, that Mrs. Beals came to her door screaming between 2:30 and 3:00 A.M. on February 2, 1968, and that Mrs. Beals was "in shock, or a state, or something." The court, however, would not allow Mrs. Shuler to testify as to any statements made by Mrs. Beals at that time.

Charles Reynolds also testified on behalf of the Defendant that he saw Mrs. Beals in Mrs. Shuler's living room on February 2, 1968, between 2:00 and 2:35 A.M. and that she was bleeding but was not permitted to testify as to any statements made at that time by Mrs. Beals.

After a judgment on behalf of the Plaintiffs, the Defendant appeals.

The Defendant alleges that the court below erred in excluding from the evidence (1) the testimony of Hazel Shuler and Charles Reynolds as to statements made to them by Mrs. Beals, (2) the police report and testimony of Officer Reese with regard to that police report, and (3) the "history" of Mrs. Beals' physical condition at the time of her admission to the hospital shortly after the accident as recorded in the hospital records and that the verdict of the court below sitting without a jury was clearly erroneous.

This Court believes that the statements of Mrs. Beals

to Mrs. Shuler and Mr. Reynolds constituted part of the *res gestae* and, therefore, that the court below erred in excluding this testimony.

The Latin term *res gestae* (translated as "things done") has been used "in almost every conceivable connection" to justify the admission or exclusion of evidence. It has been employed to characterize non-verbal facts, utterances which are not introduced for their truth and, therefore, are not "hearsay," as well as utterances which are "hearsay." Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae*, 31 Yale L.J. 229, 229-30 (1922). Within the broad ambit of this "catch-all" phrase and as an exception to the hearsay evidence rule have been included spontaneous exclamations uttered contemporaneously or soon after a startling event which characterize or elucidate it. Such declarations are deemed trustworthy, since they are the product of nervous excitement rather than deliberation and represent the facts talking through the party rather than the party talking about the facts.[1] *Reckard v. State,* 2 Md. App. 312 (1967).

Various factors are considered in determining spontaneity.[2] Proximity in time between the occurrence and the utterance may be an important element although it certainly is not determinative. *Patterson v. Baltimore &*

---

1. "When a witness in court offers evidence regarding a matter within his own knowledge, he is under oath and subject to cross-examination. If he reports the utterance of another, he is, as to the fact and content thereof, in exactly the same situation as if he were reporting any non-verbal event of which he has knowledge. His oath and the cross-examination, however, are guaranties only that he is himself speaking the truth, and not at all that the person whose utterance he is reporting was speaking the truth. . . . when the utterance is offered for its truth, then the witness is testifying only to its fact and content, and the utterer is testifying to the matter asserted in the utterance. As the utterer is not under oath and is not subject to cross-examination, his testimony is ordinarily deemed too untrustworthy to be received. If it is to be admitted, it must be because there are some good reasons for not requiring the appearance of the utterer and some circumstance of the utterance which performs the functions of the oath and the cross-examination." Morgan, *op. cit.* 31 Yale L.J. 230-31.

2. See Annot., 53 A.L.R.2d 1245 (1957) on "Admissibility as *res gestae* of statements or exclamations relating to cause of, or responsibility for, motor vehicle accident."

*Ohio Railroad Co.*, 133 Md. 276 (1918). Neither is the place of utterance necessarily a controlling factor. A statement uttered at a place other than where the exciting event transpired may still be considered spontaneous.[3] Instead, the physical and emotional condition of the declarant produced by the event may be a more reliable indicator of whether the statement was the product of nervous excitement rather than reflection.[4] Although an inculpatory statement might be more readily accepted as unfabricated, the fact a statement was self-serving does not preclude its being held admissible as *res gestae*. *Shirks Motor Express v. Oxenham*, 204 Md. 626 (1954).

Apart from the above generalization "[t]o argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle and to cumber the records with unnecessary and unprofitable quibbles." VI Wigmore, *Evidence* (3rd ed.), Sec. 1750. Whether certain declarations are admissible as *res gestae* depends upon the facts and circumstances of each particular case. *Patterson v. Baltimore & Ohio Railroad Co.*, *supra.*

The evidence in the instant case discloses the requisite spontaneity of Mrs. Beals' remarks to constitute *res gestae*. The collision occurred at approximately 2:30 A.M. on February 2, 1968. The testimony of Mrs. Shuler and Mr. Reynolds places Mrs. Beals at the home of Mrs. Shuler sometime between 2:00 and 3:00 A.M. Mrs. Shuler lived between five to seven blocks from the scene of the accident. Mrs. Beals' physical and mental condition, as testified to by the witnesses, indicates lack of composure. Furthermore, the fact her declarations to Mrs. Shuler and Mr. Reynolds may have indicated her intentional strik-

---

3. See *Parker v. State*, 7 Md. App. 167 (1969), where a murder victim's statements were made in a hospital emergency room.

4. See *Long v. State*, 3 Md. App. 638, 641 (1968), where the declaration was made by the victim of a shooting to State Troopers some two hours after the occurrence. "When the State Troopers arrived the victim was found lying upon a bed in the bedroom, bleeding profusely from the mortal wounds he had received from the shotgun blast. He was unattended and in a state of shock, in great pain, and had lost consciousness for a period prior to their arrival."

ing of the Plaintiffs' car, thus making her remarks inculpatory, would, if anything, bolster their reliability.

In view of our finding as to the Defendant's first allegation of error, we reverse the judgment below. Since the case is being remanded for a new trial, however, it may be desirable for us to discuss briefly the other two contentions raised by the Defendant dealing with the admissibility of evidence. Maryland Rule 1085.

As to police accident reports, items thereon which are within the personal observation of the investigating officer are admissible under the business record statute, Md. Code, Art. 35, Sec. 59. *Levine v. Beebe,* 238 Md. 365 (1965). Items based on hearsay and conclusions of the officer, however, are inadmissible. *Holloway v. Eich,* 255 Md. 591 (1969). In *Holloway v. Eich, supra,* the Court of Appeals further ruled that when plaintiff Holloway's counsel cross-examined the officer as to a diagram in the accident report which was based not on the officer's personal observations but upon the observations of others present at the scene, he waived any objection to anything else in the report based on the same hearsay information.

In the instant case, Plaintiffs' counsel on direct examination confined himself to matter which Officer Reese personally observed. Therefore, there was no basis for admitting the entire police report on cross-examination. The admission of that part of the police accident report based upon the personal observation of Officer Reese, the investigating officer, would be proper. This would include the damage to both automobiles which was observed by the officer. Unless the Plaintiffs should "open the door", however, by referring to or questioning Officer Reese about the hearsay portion of his accident report which was based upon information given to him by other officers about statements made by Mrs. Beals to those other officers such testimony by Officer Reese would be inadmissible as hearsay and such portion of his accident report would likewise be inadmissible.

As far as the hospital record is concerned, the general rule is that all statements in a hospital record which are

"pathologically germane," that is relevant to the diagnosis and treatment of the condition which caused the patient to go to the hospital, are admissible under Md. Code, Art. 35, Sec. 59. *Yellow Cab Co. v. Hicks,* 224 Md. 563 (1961). Applying that general rule to the case at bar, since it clearly appears that Mrs. Beals was treated at the hospital for a stab wound, that part of the hospital history, at the very least, indicating that she had been stabbed should be admissible.

*Judgment reversed.*
*Case remanded for a new trial. Costs to be paid by appellees.*