CARLTON CARL DIXON, THE YOUNGER *v.* STATE OF MARYLAND

[No. 1125, September Term, 1974.]

*Decided July 3, 1975.*

The cause was argued before POWERS, GILBERT and MELVIN, JJ.

*Theodore B. Oshrine, Assigned Public Defender*, for appellant.

*David B. Allen, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Leslie Stein, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

At approximately 6:15 o'clock on the morning of February 24, 1974, in Baltimore City, a Hong Kong citizen was robbed at gun point by two men, forced to perform fellatio upon one of her attackers, and she was raped by the same individual. The actual rape was interrupted by the arrival of the police. The criminals fled, but one of the assailants was apprehended within a short distance of the scene of the crime. The other culprit, the appellant, Carlton Carl Dixon, was identified by the prosecutrix from police identification photographs, and he was arrested at his home. He was

subsequently convicted in the Criminal Court of Baltimore by a jury presided over by Judge Robert L. Karwacki.

On appeal to this Court appellant poses four issues for our review. He asserts:

> "I. The Appellant was denied his right 'to be confronted with the witnesses against him' when the trial judge failed to hear testimony from the jurors or to grant a new trial where, in a prosecution for rape, the Appellant did not take the witness stand, yet the jurors were advised by another juror as evidenced by Officer Pullen's Affidavit that the Appellant had a prior rape conviction.
>
> II. The In-Court identification was so tainted by the line-up identification made by the prosecuting witness since the only two men in the line-up who did not have facial hair were the two Defendants.
>
> III. The viewing by the prospective jurors of the Defendants in handcuffs and accompanied by jail guards was so prejudicial as to deny the Defendants a fair and impartial trial.
>
> IV. The denial of the deposition of the prosecuting witness, requested in order that trial counsel have a fair opportunity to prepare for trial, was an abuse of judicial discretion and a denial of due process of law."

The sufficiency of the evidence necessary to sustain the conviction is not here attacked by appellant, and therefore, no useful purpose will be gained by a recitation of the sordid facts surrounding the commission of the crimes. We shall recount only such facts as may be necessary to a resolution of the particular issue under discussion.

## I.

The primal contention of the appellant is that the trial court erred in refusing to grant appellant a new trial

because a member of the jury panel made affidavit that the jury was informed by one of the jurors that appellant had a prior record for rape.[1]

At the hearing on the motion for a new trial the appellant's trial counsel produced an affidavit of William Earl Pullen, a juror in appellant's trial. The affidavit reads:

> "*AFFIDAVIT OF OFFICER JAMES [sic] PULLEN*
>
> I was one of the jurors who sat in the case of *State of Maryland v. Carlton Dixon.* After all testimony and argument of counsel, the jury retired to the jury room to begin deliberations. During those deliberations, one of the female jurors stated that Carlton Dixon had a prior conviction for rape.
>
> I believe in my own mind that the knowledge of this prior conviction affected the jury's decision in returning guilty verdicts.
>
> s/ <i>William Earl Pullen</i> [2]<br>Officer James Pullen
>
> I SOLEMNLY DECLARE AND AFFIRM under the penalties of perjury that the above information is true and accurate.
>
> s/ <i>William Earl Pullen</i><br>Officer James Pullen"

The theme of appellant's argument at the time of the hearing on the motion for a new trial and here is that the "female juror's" alleged remark to the balance of the jury panel denied appellant his Constitutional "right to be confronted with the witnesses against him and to enjoy a trial by an impartial jury."

The general rule is that a juror will not be heard to impeach his own verdict. The rule was given "its initial

---

1. Appellant had been convicted of rape in July, 1969. He was sentenced to ten years imprisonment, but was paroled on December 3, 1973.

2. The data relative to the jury panel from which Mr. William E. Pullen was selected discloses that Pullen was a "Correctional Officer, Balto. City." We glean therefrom that Mr. Pullen was a guard at the Baltimore City Jail.

impetus as early as 1758 by Lord Mansfield in *Vaise v. Delaval*, 1 T.R. 11, 99 Eng. Rep. 944." *Williams v. State*, 204 Md. 55, 68, 102 A. 2d 714 (1954). The Iowa Supreme Court relaxed in *Wright v. Illinois and Mississippi Telegraph Co.*, 20 Iowa 195 (1866) the Lord Mansfield Rule with the articulation of what is still styled the "Iowa Rule". That rule allows both "affidavits and testimony of jurors for the purpose of correcting a clerical mistake in the jury's uttered verdict or to avoid the verdict because of irregularities of conduct, among which are intoxication, separation, private view, consultation of witness or party, acceptance of bribes, and reading of illegal documents." *Williams v. State, supra*, 204 Md. at 68.

The Supreme Court of the United States, fifteen years before the promulgation of the "Iowa Rule", in *United States v. Reid*, 53 U. S. (12 How.) 361 (1851), modified the Lord Mansfield Rule and accepted a distinction between the juror's mental processes and extraneous acts which influence the juror's decision. The Court allowed evidence as to the latter and not the former. Subsequently the Court in *Mattox v. United States*, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917 (1892) established the "Iowa Rule" as the rule to be used in the federal courts.

Then Chief Judge Sobeloff of the Court of Appeals of Maryland, in *Williams v. State, supra*, stated that the Supreme Court in *McDonald v. Pless*, 238 U. S. 264, 35 S. Ct. 783, 59 L. Ed. 1300 (1915) seemed "in language at least, to tend toward return to the stricter rule of exclusion formulated by Lord Mansfield." Judge Sobeloff said:

> "While there has been some criticism of the federal rule as declared in *McDonald v. Pless* (see *Jorgensen v. York Ice Machinery Corporation*, 160 F. 2d 432, 435, *cert.* denied 332 U. S. 764; Note, 47 *Col. L. Rev.* 1373), 'it is beyond doubt a settled rule that jurors in the federal courts will not be heard "for the purpose of impeaching the verdict returned where the facts sought to be shown are such that they essentially inhere in the verdict," ' *Rakes v.*

*United States,* 169 F. 2d 739, 745, *cert.* denied 335 U. S. 826; *Edwards v. District of Columbia,* 68 A. 2d 286, 288. The federal rule has been summarized by Wigmore as making inadmissible jurors' misunderstandings, motives, beliefs and improper remarks and the like. *See 8 Wigmore,* Sec. 2349." 204 Md. at 70.

Maryland, however, has not deviated from the rule that what occurs in the jury room, generally, remains in the jury room. That is to say that jurors cannot ordinarily be heard to impeach their own verdict "whether the conduct objected to be misbehavior or mistake." *Williams, supra* at 70. *See also* 2 J. Poe, *Pleading and Practice at Law* § 348 (5th ed. H. Tiffany, 1925); *Kelly v. Huber Baking Co.,* 145 Md. 321, 328, 125 A. 782 (1924); *Brinsfield v. Howeth,* 110 Md. 520, 530, 73 A. 289 (1909), *Ford v. State,* 12 Md. 514, 546 (1859); *Bosley v. Chesapeake Insurance Company,* 3 G. & J. 450, 473, footnote (1831).

The reasoning behind the Maryland Rule is that public policy forbids the disclosure of jury secrets inasmuch as such a disclosure opens wide the door for possible fraud, perjury and tampering. Therefore, the law has wisely guarded against an invasion by litigants or others of the jury room, and the law has continuously endeavored to safeguard and hold inviolate the secrets of the jury deliberation.

Courts, however, are reluctant to lay down an ironclad rule which would, under all circumstances, preclude jurors from impeaching their own verdict. This is so, in the words of Chief Justice Taney, because "cases might arise in which it would be impossible to refuse . . . [the affidavits of jurors impeaching their own verdict] without violating the plainest principles of justice." *United States v. Reid, supra* at 366. *See also United States v. Rees,* 193 F. Supp. 861 (D. Md. 1961). We, in Maryland, have recognized that "a juror's affidavit, or testimony tending to prove the fact set forth in the affidavit, might be introduced in an appropriate independent criminal proceeding." *Williams v. State, supra* at 71. Chief Judge Sobeloff concluded in *Williams* at 71,

however, that *"under no circumstances" is a juror's affidavit or testimony "admissible to impeach the juror's own verdict at the hearing of the motion for a new trial."* (Emphasis supplied). To the same effect *see also Kelly v. Huber Baking Co., supra* at 329 wherein it is stated, "under no circumstances could" a juror's "affidavit be considered for the purpose [impeachment of the verdict] at the hearing of the motion for a new trial."

In the instant case the above quoted affidavit was produced at the hearing on the motion for a new trial. At the same time, the trial judge was advised that two (2) to four (4) of the jurors who heard appellant's case had journeyed to the Baltimore City Jail for the purpose of advising appellant that the Assistant State's Attorney who prosecuted this case in the trial court had improperly advised the jury of the appellant's prior criminal record. To counter such assertion, the State introduced seven (7) "Baltimore City Jail Visitor Pass" forms, dated subsequent to the trial. The seven passes, which were the only passes used by persons going to see the appellant, were used by a total of four persons, one of whom was trial counsel and none of whom was a member of the jury panel.

In any event, neither the affidavit of the juror, nor the testimony of that juror or other jurors, was admissible at the hearing on the motion for a new trial. *Williams v. State, supra.* Judge Karwacki did not abuse his discretion in refusing to consider the affidavit, nor in declining to hear testimony relative thereto. *State v. Devers,* 260 Md. 360, 272 A. 2d 794 (1971).

## II.

The appellant argues that the in-court identification of him by the prosecutrix was tainted. He grounds this assertion upon allegations that there were five persons in a line-up that was held in the Central Police Station, but that only the appellant and his co-defendant [3] "did not have facial hair." Although the prosecutrix acknowledged in her

---

3. The co-defendant is not a party to this appeal.

testimony that the co-defendant did not have facial hair, she was of the opinion that the appellant did have, "if you look real hard." The photograph that was taken of the line-up was not made a part of the record, and it is thus impossible for us to make an independent appraisal thereof. We do note, however, that according to the prosecutrix's testimony, she spent a period of fifteen to twenty minutes with the appellant during which time she had ample opportunity to observe him. The prosecutrix testified that the lighting conditions were such that she was able to see readily the appellant. Moreover, without hesitation, she selected the photographs of the appellant and his co-defendant from among fifteen police "mug shots", and the line-up occurred subsequent to the photographic identification procedure.

We are required by mandate of the Supreme Court of the United States to exercise an independent review of the evidence surrounding or concerned with the identification procedure that is employed in a given case. *Neil v. Biggers,* 409 U. S. 188, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972); *Foster v. State,* 272 Md. 273, 323 A. 2d 419 (1974). Bearing in mind our constitutional duty, when the testimony of the prosecutrix is weighed on the scale of *Neil v. Biggers, supra,* as articulated in *Dobson v. State,* 24 Md. App. 644, 335 A. 2d 124, *cert. denied,* June 2, 1975, it is apparent that because of her fifteen to twenty minutes' opportunity to view the appellant under circumstances where his facial features were visible, the emphatic certainty of her photographic identification of appellant, which occurred within a matter of hours following the rape, the relationship in point of time of the line-up to the crimes, *i.e.,* within five days thereof, we are led to the conclusion that the line-up identification was not impermissibly-unnecessarily suggestive. *See Dobson v. State, supra.* The trial judge properly declined to suppress the judicial identification.

### III.

Appellant penultimately contends that as a result of his being led, handcuffed, into the courtroom, in the presence of the jury, he was denied a fair trial. The short answer to this

contention is that the appellant was shackled *only* while being led into the courtroom and away from the courtroom. This action was necessitated, in the opinion of the trial judge, because:

> " . . . We are in a period at the Baltimore City Jail with some problems regarding the handling of prisoners awaiting trial inasmuch as the Baltimore City Jail personnel are now on strike and the custody of the prisoners is being handled in conjunction with the Baltimore City Police Department and the Sheriff's office. The defendant Dixon made a rather audible comment to one of the Sheriffs at the conclusion of the proceedings this morning to the effect that 'If you touch me again M. - - - F. - - - I'm going to punch you in the nose.' In light of that, and I think it is perfectly reasonable for these personnel to take what security measures are necessary for the protection of the people in the courtroom and the Court and counsel as may be dictated by a recalcitrant defendant. I don't see any prejudice to these defendants, but, moreover, whatever prejudice that resulted from the appearance of shackles, they brought on themselves."

If an accused so deports himself as to disrupt or threatens to disrupt the orderly process of the trial, or threatens to do bodily harm to the judge or courtroom attendants, the trial judge, in keeping with his obligation to assure the swift and proper administration of justice, is justified in taking such precautions as may be necessary to carry out his duty subject, of course, to appellate review in order to protect an accused from a denial of due process of law. *See Illinois v. Allen,* 397 U. S. 337, 90 S. Ct. 1057, 25 L.Ed.2d 353 (1970); N. Dorsen & L. Friedman, *Disorder in the Court* (Report of the Association of the Bar of the City of New York, Special Committee on Courtroom Conduct 1973).

Under the circumstances of this case, we observe no abuse of discretion, nor are we able to conclude, on the basis of the

record before us, that the appellant's wearing of handcuffs at the time of his entrance into the courtroom, and his being re-handcuffed upon exiting the courtroom, amounted to a denial of due process or deprived the appellant of a fair and impartial trial. *See Dunphy v. State,* 13 Md. App. 671, 677, 284 A. 2d 631 (1971).

## IV.

Ultimately appellant argues that the trial court erred in not allowing the appellant to depose the prosecutrix prior to trial. The basis of appellant's desire to take the prosecutrix's deposition was that the audio recording, taken at the time of the preliminary hearing in the District Court, was "full of inaudibles." No contention is made that the State purposely caused such "inaudibles", nor did trial counsel, insofar as we can tell, heed the suggestion of the judge and refer to counsel's own notes presumably taken at the time of the preliminary hearing. There is no constitutional right to depose, in a criminal case, a State's witness, nor is there a provision in the Maryland Rules for such discovery. Indeed, the only time that a deposition, in a criminal case, may be taken is specified in Md. Rule 727 a. It provides:

> "If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court, may, in its discretion, upon motion of an accused or State's attorney and notice to the parties order that the testimony of such witness be taken by deposition and that any designated book, paper, document or tangible object, not privileged, be produced at the same time and place."

The purpose of the rule is patently for the perpetuation of evidence, not its discovery. *Kardy v. Shook,* 237 Md. 524, 207 A. 2d 83 (1965). Moreover, the Court of Appeals in *Kardy* said that trial courts lack an inherent power to direct the taking of depositions. *See also Collins v. State,* 12 Md. App.

239, 278 A. 2d 311 (1971), *aff'd* 265 Md. 70, 288 A. 2d 163 (1972). The long and short of the matter is, simply stated, that at the present time an accused has no right to discovery by way of a deposition in a criminal case.

*Judgments affirmed.*