HOWARD TURNER AND MARK TYRONE WILLIS
*v.* STATE OF MARYLAND

[No. 765, September Term, 1980.]

*Decided April 9, 1981.*

The cause was argued before MORTON, WILNER and WEANT,
JJ.

*Morris Lee Kaplan* for appellant Willis. *William A. Beale, Assigned Public Defender,* for appellant Turner.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Ara Crowe, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court. WILNER, J., filed a dissenting opinion at page 380 *infra.*

In this matter we have the appeals of Howard Turner and Mark Tyrone Willis, Mr. Turner's appeal being from convictions in the Criminal Court of Baltimore for murder in the first degree; unlawful use of a handgun in the commission of a crime of violence; unlawfully wearing, carrying, and transporting a handgun upon his person; and robbery with a dangerous and deadly weapon; and Mr. Willis's appeal being from a conviction of murder in the second degree.

On or about 15 September 1979, at around 6:00 a.m., one Vernon Hoshall was shot and killed and his watch and wallet were stolen. At the same time John Morris, one of the assailants, was shot in the left shoulder by his fellow accomplice Howard Turner. Thereafter, the wounded Mr. Morris ran from the scene of the shootings to a nearby apartment where he was met by Thelma Williams and Dennis Atkinson. At the appellants' trial John Morris testified that upon his arrival at the Williams-Atkinson apartment he told Thelma Williams that he had been shot by Howard Turner when "we was robbing this man." He also testified that he gave her a watch that he had taken from Mr. Hoshall, along with the instruction that she hold it for him. At that time he asked someone to call an ambulance for him. This was done and he was taken to Provident Hospital. At the trial Ms. Williams and Mr. Atkinson confirmed what John Morris purportedly said while he was at their apartment.

Shortly after Mr. Morris arrived at the aforementioned apartment, Mark T. Willis "and some other dude" arrived.

Thelma Williams testified that "[t]hey [Mr. Willis and the other person] was talking to the boy [John Morris] and told him for to come on [with them] but he said no, he had a bullet in his back and he was waiting for the ambulance. Then Mark and the other two went in the bathroom and went out the window and went off the roof." Later, the victim's wallet was found on the roof. Other facts will be forthcoming as we entertain the individual appeals.

## Howard Turner

This appeal presents the following questions:

I. Whether the Trial Court erred in refusing to grant Motions for Judgment of Acquittal or for New Trial because the State's case against Appellant consisted entirely of uncorroborated statements and testimony of an accomplice.

II. Whether the Trial Court committed reversible error in refusing to disqualify a juror who indicated during the course of the trial that he recognized the prosecution's witness to be a former employee of his.

III. Whether the Trial Court erred in refusing to grant a Motion for Mistrial when the State elicited testimony concerning previous incarceration of Appellant.

IV. Whether the Trial Court erred in refusing to grant a Motion for New Trial after allowing a juror to impeach her verdict.

## I.

This complaint relies upon the Maryland law that holds that the testimony of an accomplice must be corroborated by independent testimony or evidence, however slight. *Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977). In the instant case the testimony of the accomplice John Morris was also presented through that of two witnesses, under an exception

or exceptions to the hearsay rule, in order to bolster the charges against Howard Turner.

It is argued by the appellant Turner that even though the statements relied upon were also presented by way of the testimony of persons other than the accomplice, this "does not convert th[ose] statement[s] into something other than the words of an accomplice under the facts of the case at bar." Nevertheless, it is argued by the State that the trial court's admission of these statements under the exception to the hearsay rule, that is, an admission against penal interest made as an excited utterance, not only did no injustice to the rationale of the corroboration rule, but satisfied it as well. While at first blush the State's argument appears to be a sort of bootstrapping proposition, we perceive the merit in this thesis. We confine our discussion, however, to the excited utterance exception and the hearsay rule.

In considering the excited utterance exception as an adjunct to the corroboration of an accomplice's testimony, we look to the statement of this Court in *Reckard v. State,* 2 Md. App. 312, 316-17, 234 A.2d 630, 632-33 (1967), *cert. denied,* 248 Md. 734 (1968):

> To constitute *res gestae* an utterance need not in all strictness be contemporaneous, in the sense of simultaneous, with the principal act; it may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and be dissipated by meditation.

> The point is not so much the lapse of time or change of place as the continuance of the situation which insures that what is said is, in fact, a spontaneous reaction to the occurrence, rather than an independent, preconceived action of the speaker's will. [Citation omitted].

Similarly, this Court said in the case of *Honick v. Walden,* 10 Md. App. 714, 272 A.2d 406 (1971) at page 717, 272 A.2d at 408, that "[s]uch declarations [*res gestae*] are deemed trustworthy, since they are the product of nervous excitement rather than deliberation and represent the facts

talking through the party rather than the party talking about the facts." (Citation and footnote omitted). In 6 J. Wigmore, *Evidence* § 1747 (Chadbourn rev. 1976), the author said of the exception of excited utterance:

> This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him, and may therefore be received as testimony to those facts. [Footnote omitted.]

Somewhat analagous to our situation here is the holding in this and other states that testimonial incompetence is no bar to an excited utterance. In *Moore v. State,* 26 Md. App. 556, 338 A.2d 344, *cert. denied,* 276 Md. 747 (1975), this Court considered with approval the admission of the testimony of a three and one-half year old child under the *res gestae* or excited utterance principle. In so doing, Judge Moylan, in speaking for the Court, quoted with approval, at pages 561-62, 338 A.2d at 347, McCormick, *Law of Evidence* 582 (1st ed. 1954):

> "Must the declarant be shown to have met the tests of competency for a witness? In general, it seems not. The declarant is not usually before the court to be examined as to his competency, and the declarations furthermore come in only under spe-

cial safeguards — here, the requirement of *excited utterance* — which diminish the need for further caution. Consequently, it is held that evidence of spontaneous declarations of infants is admissible despite the incompetency of the child as a witness. Such is also the rule in the case of an insane declarant, or one incompetent by reason of conviction of a felony, or where the declaration was made by the husband or wife of the accused in a criminal case." [Original emphasis.]

At page 566, 338 A.2d at 349, Judge Moylan continued:

In the case at bar, this three and one-half year old child was in acute distress and suffering significant pain in a hospital emergency room within hours after the inflicting of massive injuries. It is stating the obvious to hold that the trial judge did not abuse his discretion in concluding that the declaration in issue was surrounded by substantial guarantees of trustworthiness and was not uttered designedly with a view to making evidence. Under those circumstances, it was clearly admissible.

Immediately after he was shot in the shoulder, the declarant ran directly from the scene of the robbery in which he had participated to the apartment of the witnesses. He arrived there within minutes of the shooting; bleeding, in pain, and seeking an ambulance. It was then that he uttered the incriminating statements. It is clear that John Morris was under the immediate and uncontrolled domination of his senses at the time his out-of-court statements were made to Thelma Williams and Dennis Atkinson. At that moment it would have gone beyond the bounds of reason that he could have been able to fabricate a statement of accusation "'either to gratify his malice or shield himself from punishment, or in the hope of receiving clemency by turning State's evidence.'" *Brown, supra,* 281 Md. at 244, 378 A.2d at 1107 (quoting *Watson, supra,* 208 Md. at 217, 117 A.2d at 552). This is a fine example of "the facts talking through the

party rather than the party talking about the facts." *Honick, supra,* 10 Md. App. at 717, 272 A.2d at 408.

Consequently, we hold that the witnesses' testimony as to Mr. Morris's excited utterance wherein he implicated Howard Turner in the participation in the crime against Vernon Hoshall, is sufficient corroboration of Mr. Morris's in-court testimony that the appellant shot the victim. Hence, the trial court was correct in refusing to grant Mr. Turner's Motions for Judgment of Acquittal or for a New Trial because the testimony of his accomplice lacked corroboration.

## II.

The appellant complains because the trial court refused to disqualify a juror who, during the course of the trial, indicated that he recognized a witness as having been an employee of a supermarket he had managed. According to the juror, the witness in question had worked for him for three to six months, approximately seven and a half years before. The appellant's motion to disqualify this juror and substitute an alternate was denied by the court after it had questioned the juror as to whether or not the fact that he knew a witness would prevent him from rendering a fair and impartial verdict. The juror maintained that the knowledge that he had of the witness would not enter into his deliberations.

In the case of *Mills v. State,* 12 Md. App. 449, 279 A.2d 473, *cert. denied,* 263 Md. 717 (1971) and 406 U.S. 967, 92 S. Ct. 2411, 32 L. Ed. 2d 666 (1972), this Court considered the question of a juror's discovery that she knew one of the witnesses. In this regard the Court, at page 459, 279 A.2d at 481, said through then Chief Judge Murphy that "[t]he relation of a juror to a witness may present an opportunity for prejudice. *Bristow v. State,* 242 Md. 283. However, mere relation or mere acquaintance is not a sufficient basis for challenging a juror for cause. *Baker v. State,* 3 Md. App. 251, *Borman v. State,* 1 Md. App. 276."

In the case at bar the appellant has failed to successfully demonstrate, nor can we find, any prejudice or abuse in the trial court's decision not to disqualify a juror under the circumstances presented. We think that the court acted properly in this regard.

### III.

The instance complained of occurred during the cross-examination of the appellant's co-defendant Mark T. Willis. In response to the State's question whether or not "[t]he two of you [meaning Willis and Turner] became friends," Mark Willis said "[y]eah." The next question brought about the response objected to: "Q. Hang around together? A. No, because he was locked up then." A motion for a mistrial was requested and denied. The court then instructed the jury as follows: "Members of the jury, the last remark of the witness concerning Mr. Turner is to be ignored by the jury. It has nothing to do with the case and should not be considered by you in any manner." Obviously, the response given by the appellant Willis was inadvertent and unexpected. In addition, the court instructed the jury to disregard the statement since it had nothing to do with the case. In fact, the bald statement that "he was locked up then" would seem to carry very little prejudicial information. We find no merit in the appellant's contention to the contrary.

### IV.

Mr. Turner seeks a new trial because of the alleged impeachment by a juror of the verdict. The appellant argues that *Dixon v. State,* 27 Md. App. 443, 340 A.2d 396, *cert. denied,* 276 Md. 741 (1975) "clearly implies that there may be circumstances under which the verdict of a juror may be impeached." We gather that the appellant seeks succor from the statement of the Court in that case at page 448, 340 A.2d at 400, *i.e.,* that "[c]ourts, however, are reluctant to lay down an ironclad rule which would, under all circumstances, preclude jurors from impeaching their own verdict." How-

ever, on the same page we find the statement: "We, in Maryland, have recognized that 'a juror's affidavit, or testimony tending to prove the fact set forth in the affidavit, might be introduced in an appropriate independent criminal proceeding.'" (Quoting *Williams v. State,* 204 Md. 55, 71, 102 A.2d 714, 722 (1954)). Thereafter the *Dixon* Court continued its quoting of *Williams,* approving that cases's dictate that "'*under no circumstances' is a juror's affidavit or testimony 'admissible to impeach the juror's own verdict at the hearing of the motion for a new trial.'* (Emphasis supplied.)" 27 Md. App. at 449, 340 A.2d at 400.

In the case *sub judice* the question of impeachment was raised at the polling of the jury and by the responses of juror number 12.

> THE CLERK: Juror No. 12, you've heard the verdicts of your Forelady, are your verdicts the same as hers?
>
> JUROR NO. 12: I was the one kind of undecided.
>
> THE COURT: Have you decided? You agree with these verdicts as announced by your Forelady?
>
> JUROR NO. 12: I agree, yes.
>
> THE COURT: I beg your pardon?
>
> JUROR NO. 12: Yes, I do.
>
> THE COURT: And they are your verdicts as announced by the Forelady?
>
> JUROR NO. 12: Yes.
>
> THE COURT: Your verdicts are the same as hers, are they?
>
> JUROR NO. 12: Yes.
>
> THE COURT: She says yes. All right, Mr. Clerk.

Thereafter, a conference was held in chambers among the judge, the juror, and counsel. However this conference was not recorded and there is nothing on which this Court can rule in this regard.

It is argued by the appellant Mark T. Willis that when the jury was polled the presiding judge was immediately put on

notice that he should have sent the jury back to the jury room and kept juror 12 in the courtroom for the purpose of probing into the situation. However, it is obvious from the above colloquy between juror 12 and the judge that the court did so probe, and as a result was satisfied that the verdict was the juror's own.

Thereafter, a hearing was had on the appellant's motion for a new trial at which the court mistakenly allowed, over the objection of the State, testimony prohibited by *Dixon, supra.* At this hearing juror number 12 told the court that she had indicated to the other jurors that she was not "ready to make my decision," but nonetheless admitted several times that her verdict was guilty. It was established by the court that juror number 12 informed the other members of the jury that her "verdict was guilty in the same manner as theirs." On cross-examination of juror number 12 the following took place:

> Q. Well, did you agree with the verdict of the Foreman?
>
> A. The Foreman did not know — no, not with the Foreman.
>
> Q. When it was announced in the court I'm talking about.
>
> A. Yes, I did. Yes, I did.

Even had this testimony been admissible, it certainly would not have been sufficient to impeach the verdict of a lone juror, long after the entire jury had been polled.

## Mark Tyrone Willis

This appeal presents the following questions:

[1.] The Court was in error in refusing to grant the Appellant's Motion for a judgment of acquittal at the end of the State's case and at the conclusion of the entire case.

[2.] The Court should have granted [his] Motion to Disqualify Juror based on the fact that Juror

No. 7 had worked for the same company as the State's witness.

[3.] The Court should have granted the Motion to Impeach the jury's verdict.

1.

Here again we have the argument that the testimony of an accomplice requires corroboration to sustain a conviction. In this instance the testimony of the accomplice John Morris was corroborated by the testimony of Thelma Williams and Dennis Atkinson. Their corroboration went beyond the mere repetition of the excited utterance or admission against interest discussed in section I of appellant Turner's arguments. Moreover, as to Mr. Willis's contention that Ms. Williams and Mr. Atkinson were accomplices, we note that he has failed to meet his burden of so proving. *Bennett v. State,* 283 Md. 619, 622-27, 392 A.2d 76, 77-81 (1978). Hence, the general rule that the testimony of an accomplice is sufficient to convict without corroboration has not been contravened.

2. and 3.

These propositions are similar to those raised by appellant Turner and are fully answered in sections II and IV, *supra.*

> *Judgments affirmed.*
> *Costs to be paid by the appellants.*

*Wilner, J., dissenting:*

I must regretfully and respectfully dissent from the Court's conclusion, in Turner's appeal, that the testimony given by the accomplice Morris was sufficiently corroborated or indeed was corroborated at all. The corroboration found by the Court consisted of the very words of Morris, and not any independent evidence. In effect, through the mouths of Williams and Atkinson, Morris has corroborated himself,

and it occurs to me that the Court's first blush was the correct one. The State's argument is "a sort of bootstrapping proposition."

The majority concludes that Morris's statements to Williams and Atkinson were reliable becaue they were excited utterances and because they were reliable, they may be given double effect — as primary evidence and as corroboration of that primary evidence. I find this a bit troublesome, for I know not where it leads.

The hearsay rule is riddled with exceptions, each and every one of which is based on the presumed reliability of evidence meeting the requirements of the exception. Is the rule of this case then to be applied not merely to excited utterances but to evidence admitted under some other exception to the hearsay rule? Could the testimony of an accomplice be corroborated, for example, by out-of-court declarations of the accomplice admissible as a declaration against penal or pecuniary interest or by his own written statement, if that statement proved to be admissible as a record kept in the ordinary course of business?

We are not dealing here with whether the out-of-court statements of Morris are *reliable,* but only whether they suffice as independent corroboration of his testimony; and I fail to see how they can. In *Brown v. State,* 281 Md. 241 (1977), the Court observed in defense of retaining the requirement of corroboration (p. 246): "We see as much need today, perhaps more so in view of the escalating prosecutorial trend freely to utilize accomplices as State witnesses, to retain the requirement that a person accused of crime not be convicted on the uncorroborated testimony of an accomplice."

Howard Turner may well have been guilty of robbing and killing Vernon Hoshall, but the problem is that he was convicted solely by the words of his accomplice John Morris without any corroboration thereof. For that reason, I would reverse his conviction.