501 A.2d 475

**Ronald GRANT**

v.

**STATE of Maryland.**

**No. 390, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 12, 1985.

William A. Beale, Assigned Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and Teresa Angle, Asst. State's Atty. for Baltimore County on the brief, Towson), for appellee.

Argued before BISHOP and ROBERT M. BELL, JJ., and GETTY (James S.), Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

BISHOP, Judge.

After a jury trial in the Circuit Court for Baltimore County appellant Ronald Grant was convicted of robbery with a dangerous and deadly weapon, assault with intent to rob, use of a handgun in the commission of a crime of violence and theft. The theft conviction was merged with the robbery conviction, and appellant was sentenced to three concurrent terms of nine years.

Appellant raises three issues:

I. Was the accomplice's testimony sufficiently corroborated by evidence of an extrajudicial identification?

II. Was the evidence sufficient to support appellant's convictions for robbery with a dangerous and deadly weapon, assault with intent to rob, and a handgun violation?

III. May an accused be convicted of unlawfully wearing a handgun when the uncontradicted testimony showed that the accused possessed only a BB gun?

At approximately 6:30 p.m. on February 28, 1984, two men entered a Baskins Robbins ice cream store and demanded and obtained money from employees Susan Bowersox and a co-worker. One of the men, later identified as appellant, lifted his shirt to reveal what Bowersox said was the "wooden handle to a hand pistol" but she did not know what kind. The night of the robbery, Bowersox assisted police in creating a composite drawing of one of the men. Approximately one and a half months later, at the request of the police, she reviewed a photograph array and identified a photograph of the appellant as one of the men who robbed her. In connection with the identification, she gave a summary statement in which she stated she was "sixty percent sure" that the individual in the photograph was the same person who, during the robbery, displayed the handle of the gun.

Bowersox testified why she said she was "sixty percent sure":

Why I chose sixty percent? I chose sixty percent because I don't want to be a witness in front of a Court. To my belief, that is the guy that robbed me and, yes, I am more sure than sixty percent. No, I don't want to be doing this and that's why I put sixty percent.

Antonio Grant, a State's witness who had pled guilty to participation in the robbery, made an in-court identification of appellant. He also testified that the handle displayed by appellant and seen by Bowersox was the butt of a BB gun.

The State produced several other witnesses including an individual who drove the getaway car, several police investigators, and the policeman who assisted Bowersox in the preparation of the composite drawing.

Over objection, the State was permitted to recall Bowersox to the stand in order to have the composite drawing admitted into evidence. Thereafter, appellant was permitted to recall State's witness Officer Zelenka who testified that, during the robbery investigation, he had made a notation that the composite drawing looked like Leroy Johnson, the driver of the getaway car. Appellant did not testify.

We will supply additional facts as they pertain to our discussions of the issues.

## I.

### *Corroboration*

Appellant argues that the only corroboration of accomplice Grant's testimony was the "sixty percent sure" extrajudicial identification of appellant by Bowersox and that this is not sufficient corroboration.

■ A person may not be convicted of a crime on the basis of the uncorroborated testimony of an accomplice. *Turner v. State,* 294 Md. 640, 641–42, 452 A.2d 416, 417 (1982). *See also Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977) (rejecting contention that the rule should be

abandoned). The Court set out the reasons for the rule in *Turner v. State*, 294 Md. at 642, 452 A.2d at 417:

> Our cases have expressed two reasons for the necessity of this rule: (1) the witness offering the testimony is admittedly contaminated with guilt, *see, Watson v. State, supra,* 208 Md. [210] at 217, 117 A.2d 549 [(1955)], and (2) the possibility of an ulterior motive on the part of the accomplice who seeks to curry favor with both the prosecutor and the police in the hope of obtaining a lesser sentence or a reduced charge. *See, Luery v. State, supra,* 116 Md. [284] at 293, 81 A. 681 [(1911)].

In *Brown*, 281 Md. at 244, 378 A.2d at 1107, Chief Judge Murphy wrote for the Court:

> Not much in the way of evidence corroroborative of the accomplice's testimony has been required by our cases. We have, however, consistently held the view that while the corroborative evidence need not be sufficient in itself to convict, it must relate to material facts tending either (1) to identify the accused with the perpetrators of the crime or (2) to show the participation of the accused in the crime itself. *See Wright v. State*, 219 Md. 643, 150 A.2d 733 (1959). If with some degree of cogency the corroborative evidence tends to establish either of these matters, the trier of fact may credit the accomplice's testimony even with respect to matters as to which no corroboration was adduced. *McDowell v. State*, 231 Md. 205, 189 A.2d 611 (1963). That corroboration need not extend to every detail and indeed may even be circumstantial is also settled by our cases.

Moreover, in *Turner*, 294 Md. at 642, 452 A.2d at 417, the Court stated that while "the rule requiring corroboration presumes that the accomplice's testimony, by itself, is untrustworthy[,] ... as a safeguard against depriving the fact finder of evidence from a source intimately connected with the crime, we have said that only *slight* corroboration is required." (emphasis supplied). The *Turner* Court then went on to quote the above from *Brown*.

Appellant attempts to convince us that *Brown's* "some degree of cogency" and *Turner's* "slight corroboration" tests translate into a "clear and convincing" standard for the evidence necessary to corroborate the testimony of an accomplice. At least 14 times since *Brown* in 1977, appellate courts of this State have applied the foregoing standards and not a "clear and convincing" standard in weighing the sufficiency of evidence corroborative of accomplice testimony.[1]

---

1. *Turner v. State,* 294 Md. 640, 641–43, 452 A.2d 416, 417–18 (1982) (corroborative evidence sufficient if it tends with some degree of cogency to establish certain matters); *Bennett v. State,* 283 Md. 619, 622, 627 n. 11, 392 A.2d 76, 77, 80 n. 11 (1978) (not much in the way of evidence corroborative of accompliace testimony is required); *Thomas v. State,* 63 Md.App. 337, 348–49, 492 A.2d 939, 945 (1985) (corroborative evidence sufficient if it tends with some degree of cogency to establish certain matters); *Rivenbark v. State,* 58 Md.App. 626, 632–33, 473 A.2d 1329, 1332–33 (1984) (corroborative evidence may be minimal so long as it tends to establish certain matters with some degree of cogency); *Braxton v. State,* 57 Md.App. 539, 552–54, 470 A.2d 1327, 1333 (1984), *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984) (corroborative evidence sufficient if it tends to establish certain matters with some degree of cogency); *Samuels v. State,* 54 Md.App. 486, 491–96, 459 A.2d 213, 217–19 (1983) (corroborative evidence may be slight and need not, in itself, be sufficient to convict; if it tends to establish certain matters it is sufficient); *Oliver v. State,* 53 Md.App. 490, 505–06, 454 A.2d 856, 865 (1983), *cert. denied,* 296 Md. 61 (1983) (only slight corroboration is required which would tend to establish certain matters); *Proctor v. State,* 49 Md.App. 696, 700–02, 435 A.2d 484, 486–87 (1981) (corroborative evidence sufficient if it tends to establish certain matters with some degree of cogency); *Erman v. State,* 49 Md.App. 605, 625–26, 434 A.2d 1030, 1042–43 (1981), *cert. denied sub nom. Brent v. Maryland,* 456 U.S. 908, 102 S.Ct. 1756, 72 L.Ed.2d 165 (1982) (same); *Green v. State,* 49 Md.App. 1, 6, 430 A.2d 1122, 1124 (1981), *cert. denied,* 291 Md. 775 (1981) (corroborative evidence tending to show certain matters is sufficient); *Turner v. State,* 48 Md.App. 370, 372–76, 428 A.2d 88, 90–91, (1981), *rev'd on other grounds,* 294 Md. 640, 452 A.2d 416 (1982) (testimony of an accomplice must be corroborated by independent testimony or evidence, however slight, citing *Brown* ); *Higgins v. State,* 41 Md.App. 177, 180 n. 2, 396 A.2d 311, 313 n. 2 (1979), *cert. denied,* 284 Md. 744 (1979) (accomplice testimony together with but the legally required minimum of corroboration is sufficient, citing *Brown* ); *Brown v. State,* 39 Md. 497, 503–06, 388 A.2d 130, 135 (1978), *rev'd on other grounds,* 285 Md. 469, 403 A.2d 788 (1979) (not much in the way of evidence corroborative of accomplice testimony is required and it will suffice if the evidence tends to establish certain matters with a satisfactory degree of cogen-

■ Appellant's "cogency" argument, based on a dictionary definition of the word as the quality of being "forceful and to the point, as a reason or agreement; compelling; convincing," completely overlooks the context in which the word is used in *Brown*. First, "not much in the way of evidence" is required; second, the evidence must "tend to establish" certain material facts with "some degree of cogency" which *Turner* interprets to require only "slight corroboration." *Brown*, 281 Md. at 244, 378 A.2d at 1107; *Turner*, 294 Md. at 642, 452 A.2d at 417. We, therefore, find that the test for weighing the sufficiency of evidence to corroborate accomplice testimony is the "some degree of cogency" standard set forth in *Brown* and construed by *Turner* to require only "slight" corroboration. 294 Md. at 642–43, 452 A.2d at 417.

■ We hold that the Bowersox identification was more than sufficient to meet this test for the corroboration of an accomplice's testimony.

## II.

### *Sufficiency*

Appellant argues that assuming, *arguendo*, that the corroborative evidence was sufficient to substantiate the accomplice testimony, the evidence as a whole was insufficient to form the basis for a conviction.

In *Colvin v. State*, 299 Md. 88, 109–10, 472 A.2d 953, 964, *cert. denied*, —— U.S. ——, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984) the Court observed:

> When this Court is required to review the sufficiency of the evidence to support a criminal conviction, we follow the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Tichnell v.*

cy); *Bishop v. State*, 39 Md.App. 384, 386 n. 2, 385 A.2d 1206, 1208 n. 2 (1978), *cert. denied*, 283 Md. 729 (1978) (minimal corroborative evidence is required establishing certain matters with some degree of cogency).

*State,* 287 Md. 695, 415 A.2d 830 (1980). The critical inquiry on review is to "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." 443 U.S. at 318, 99 S.Ct. at 2788, 61 L.Ed.2d at 573. However, the Court is not required to " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citations omitted]. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 318–19, 99 S.Ct. at 2789, 61 L.Ed.2d at 573 (emphasis in original).

■ Based on our review of the record, in a light most favorable to the prosecution, we hold that the evidence was sufficient to convict appellant of robbery with a dangerous and deadly weapon and assault with intent to rob; however, we reverse the handgun conviction based on the following reasoning.

### III.

### The BB Gun

■ Although we are convinced that the victims believed appellant had a handgun in his possession at the time of the robbery, the evidence, nevertheless, supports the conclusion that the weapon was in fact a BB gun which we hold is not a handgun within the meaning of Md.Ann. Code art. 27, § 36F(a) (1957, 1982 Repl.Vol.) We must, therefore, reverse appellant's conviction under art. 27, § 36B(d)[2] of

---

**2.** Although appellant contends that he was convicted of unlawfully wearing a handgun, Md.Ann. Code art. 27, § 36B(b) (1957, 1982 Repl.Vol., 1985 Cumm.Supp.), his charging document and the verdict reveal that he was charged and convicted of unlawful use of a handgun in the commission of a crime of violence. *Id.* § 36B(d). The same definition of "handgun" in § 36F(a) applies to both subsections of § 36B.

unlawful use of a handgun in the commission of a crime of violence.

A BB gun is defined as "a smooth-bore air gun actuated by a spring-loaded plunger that upon release from the cocked position compresses the air behind the pellet and propels it from the tube—compare air rifle 1." Air rifle is defined as "1: a rifle from which a projectile is propelled by air or carbon dioxide compressed usually by a lever and pump system 2: BB gun." Webster's Third New International Dictionary (1971) at 189 and 47.

In *Douglas v. State,* 37 Md.App. 557, 378 A.2d 189 (1977) this Court held that a $CO_2$[3] pellet gun having the appearance of a pistol was not a handgun within the meaning of Md.Ann. Code art. 27, § 36B(b) (1976 Repl.Vol.). 37 Md. App. at 558, 378 A.2d at 190. We specifically overruled *Todd v. State,* 28 Md.App. 127, 343 A.2d 890 (1975) which held that a $CO_2$.22 caliber pellet gun was a handgun within the meaning of the statute. *Douglas,* 37 Md.App. at 558–59, 378 A.2d at 190. Relying on *Howell v. State,* 278 Md. 389, 364 A.2d 797 (1976), we pointed out in *Douglas* that

the Court of Appeals stated the following rule as to what constitutes a handgun within the meaning of the statute:

"... [F]or this device to be a handgun it must be a firearm or it must be readily or easily convertible into a firearm. We further conclude that to be a firearm it must propel a missle by gunpowder or some such similar explosive...."

37 Md.App. at 558, 378 A.2d at 189.

In *Douglas,* we found no evidence that $CO_2$ was an explosive similar to gunpowder or that the weapon was easily convertible into a firearm and we reversed the conviction for carrying a handgun.

In the case *sub judice,* we hold that the evidence supports the conclusion that appellant carried a BB gun in the commission of the robbery. A BB gun uses compressed air

---

**3.** $CO_2$ is the scientific signature for carbon dioxide.

to propel its missle, much the same as compressed $CO_2$ is used in a pellet gun. We reverse because there is nothing in the record to show either that the BB gun was easily convertible into a firearm or that compressed air constitutes an explosive similar to gunpowder. *Douglas,* 37 Md.App. at 559, 378 A.2d at 190.

We hasten to add that our reversal of the conviction for the handgun violation does not affect appellant's conviction for robbery with a dangerous and deadly weapon. "It is not necessary that a gun be capable of discharging a lethal bullet to be a deadly weapon. Intimidation produced by the use of a weapon coupled with the apparent ability to execute the implied threat to use the weapon if resistance is offered, are sufficient." *Crum and Dunbar v. State,* 1 Md.App. 132, 134, 227 A.2d 766, 767 (1967), *cert. denied,* 246 Md. 755 (1967) (.22 caliber gas starter pistol incapable of firing a bullet was sufficient to support robbery with a dangerous and deadly weapon.) *See also, Claybrooks v. State,* 36 Md.App. 295, 314–15, 374 A.2d 365, 375–76 (1977), *cert. denied,* 281 Md. 735 (1977) (four or five inches of a gun barrel visible under the assailant's shirt when he accosted the victims, accompanied by an aggressive entry into their vehicle while commanding "get over" was sufficient to constitute the offense of attempted robbery with a dangerous and deadly weapon.)

Bowersox, one of the victims, testified that appellant told her "I'm totally serious this is for real, I want everything given to me now." He then lifted his shirt to show the handle of a gun tucked into his pants and said "Don't set off any alarms." After giving appellant the money from the cash register the victims followed appellant's instructions and got down on the floor. Bowersox testified that although she did not know what kind of a gun it was, she was "scared."

■ This evidence is sufficient to support the conclusion that the victim was intimidated by the weapon and complied with appellant's requests out of fear that he could and

would use it if she failed to perform, and therefore, supports appellant's conviction for robbery with a dangerous and deadly weapon. The fact that the weapon used in the commission of the robbery was not a handgun within the purview of art. 27, § 36B(d) is thus irrelevant to appellant's conviction for robbery with a dangerous and deadly weapon.

JUDGMENTS AS TO COUNTS I, IV AND VI AFFIRMED; JUDGMENT UNDER COUNT VII REVERSED;

COSTS TO BE PAID TWO-THIRDS BY APPELLANT AND ONE-THIRD BY BALTIMORE COUNTY.