## STATE v. FRANK JUNIOR JONES.

247 N. W. 2d 427.

November 26, 1976—No. 45785.

*C. Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Vernon E. Bergstrom, David W. Larson, Lee Barry,* and *Phebe Haugen,* Assistant County Attorneys, for respondent.

Considered and decided by the court en banc.

PETERSON, JUSTICE.

Defendant, Frank Junior Jones, on this appeal from a conviction of simple robbery and aggravated rape, contends that

he was denied a fair trial because, during trial, the trial court caused him to be bound and gagged in the presence of the jury and because, following the testimony of the complaining witness, the trial court changed the conditions of his bail release. He does not, however, challenge the sufficiency of the evidence upon which he was convicted.

On the first day of trial defendant told the court his appointed counsel was not doing his best and asked that he be dismissed. The court responded that counsel was an excellent attorney and was doing a fine job, and the court urged defendant to cooperate with him for his own protection. When court convened for the second day of trial, the jury was excused so that the court could deal with a request from defendant, who wished to make a statement to the court but refused to make it unless the jury was present to hear it. The court explained to defendant that if he wanted to make a statement in the presence of the jury he would first have to tell the court what it was, as otherwise he might say something that would cause a mistrial. Defendant still refused to make the statement unless the jury was present, and the court indicated that if defendant persisted in making the statement in the jury's presence the court would have defendant removed from the courtroom. The court then added the third alternative of binding and gagging, but defendant did not wish to elect that course of action either. The court said once again, "Now you tell me you will be quiet and I will let you sit there and we will continue with the trial," to which defendant said simply, "No."

The court then ordered that he be shackled and gagged. When defendant was returned to the courtroom under restraints, the court asked him to nod his head affirmatively or negatively to indicate once more whether he would be quiet if the trial continued without his being shackled and gagged. Defendant made no gestures, and the court said:

"Now, in that apparently you won't be quiet, I will give you a choice of either staying in the Courtroom with the shackles and

with the gag in your mouth, or be taken up to jail and have the case continue without your presence. Do you have any preference insofar as that is concerned? That is, whether you stay here gagged or be taken upstairs and we continue the trial without you. Any preference?"

Defendant made no response, and the court advised defendant that if he started any disturbance in the courtroom at any time, he would be taken back upstairs to the jail and the trial would continue in his absence.

The jury was thereafter returned to the courtroom and the trial proceeded with the taking of testimony. The trial court then instructed the jury that it should, in its weighing of the evidence, completely disregard the fact that defendant was bound and gagged.

When court resumed after the noon recess, defendant tendered a letter to the court stating he refused to go back to trial if he was to be handcuffed and gagged. The court, again, gave defendant three choices—keeping quiet, being bound and gagged, or absenting himself from the trial. Defendant did not affirmatively choose any of the alternatives, and the court directed that he be removed from the courtroom for the remainder of the trial. When the jury returned, the court recalled to the jurors that it had previously instructed them that they were to disregard the defendant's being gagged in the courtroom, and it then additionally instructed them also to disregard the defendant's absence for the remainder of the trial.

Before the jury returned to the courtroom the next day, the court again gave defendant the three choices of being quiet during trial, being gagged, or being removed from the courtroom. Again, defendant refused to choose among the three:

"There is one other thing, Mr. Jones, that I want to explain to you again before we continue with the trial. I explained to you yesterday the fact that you had the option of staying in the Courtroom and being orderly and following the rules, or to be gagged or to be taken to the jail and have the trial proceed with-

out you. Yesterday afternoon we followed the latter alternative and the trial did proceed in your absence, so I want to ask you again, Mr. Jones, if you want to continue with the trial with your presence in the Courtroom but in an orderly manner. Will you indicate to me at this time, Mr. Jones, if you will be orderly if I allow you to stay in the Courtroom?

"THE DEFENDANT: I was orderly yesterday. I was orderly the day before.

"THE COURT: Well, Mr. Jones, you have indicated that as soon as the jury got back you would be making a statement to the jury and I told you that you couldn't do that.

"THE DEFENDANT: I told you it was a statement that I would make to you.

"THE COURT: But in the presence of the jury Mr. Jones, and that I can't allow.

"Now, do you still insist on making that statement if you are allowed to remain in the Courtroom?

"THE DEFENDANT: Yes, I feel I want to make a statement, get up and talk."

Defendant was again removed from the courtroom and the jury returned.

■ The difficult burden imposed upon a trial court in balancing its public duty to conduct an orderly trial under threat of a disorderly defendant, consistent with a defendant's right to a fair trial, is manifest. The confrontation clause of the Sixth Amendment provides that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him. This clause, applicable to a state trial by the Fourteenth Amendment, is a basic right which guarantees to the defendant the right to be present in the courtroom at every stage of his trial. Illinois v. Allen, 397 U. S. 337, 90 S. Ct. 1057, 25 L. ed. 2d 353 (1970). We have in our own cases acknowledged that the shackling of defendants in the presence of the jury is to be avoided except in exceptional circumstances. In State v. Klinkert, 271 Minn. 548, 549, 136 N. W. 2d 399, 400 (1965),

where the defendant challenged the propriety of his having been taken to court in handcuffs, we did not squarely address the issue because it had not been properly raised in the trial court, but we did say:

"* * * [W]e do not suggest that where security measures require it there is any impropriety in bringing a prisoner to court in manacles, provided appropriate steps are taken to minimize his exposure to the jury's view and the handcuffs are removed before he enters the courtroom."

This was a reflection of what we had previously said in State v. Coursolle, 255 Minn. 384, 389, 97 N. W. 2d 472, 476 (1959), a case in which two of defendant's witnesses, but not the defendant, were brought into the courtroom from prison in handcuffs attached to a waist belt:

"It is our opinion under the record here that the court should have ordered the manacles removed from defendant's two witnesses. It seems obvious that the appearance of the manacled witnesses in court day after day would create an effect that would be prejudicial to defendant's right to a fair trial. The old adage that 'a man is known by the company he keeps' could easily produce an inflammatory situation so far as the jury was concerned as a result of the accused's principal witnesses being handcuffed each day during the trial. After all, the accused, whether guilty or innocent, was entitled to a fair trial and it is the duty of the trial court, the county attorney, and even the sheriff to see that he gets one by preventing any conduct or situations during the trial which prejudice the accused in the minds of the jury. * * *

"It is recognized, however, that it is within the discretion of the trial court to have a prisoner shackled when it is manifest that such a precaution is necessary to prevent violence or escape. In exercising its discretion the court must have some reason based on the conduct of the prisoner at the time of the trial to authorize so important a right to be forfeited."

The United States Supreme Court has made clear that a defendant may, by his own behavior, waive his Sixth Amendment right to confront witnesses. Illinois v. Allen, *supra.* In Allen, the defendant had engaged in boisterous conduct and stated his intent to prevent the trial from going forward. The court held that under the circumstances presented by that case it was not constitutional error to conduct the trial without the defendant's presence. Recognizing that no single formula for maintaining the appropriate courtroom atmosphere will be best in all situations, the court stated:

"* * * We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." 397 U. S. 343, 90 S. Ct. 1061, 25 L. ed. 2d 359.

We followed Allen in the case of State v. Kluck, 299 Minn. 161, 217 N. W. 2d 202 (1974), in which we found a waiver of the right to be present after the defendant engaged in boisterous conduct similar to that of the defendant in Allen. The critical question is whether this defendant's conduct constituted a waiver of his rights, since, unlike Allen or Kluck, it had not yet resulted in courtroom disorder. Defendant was restrained and removed, not because his conduct had in fact prevented an orderly trial but because of the trial court's concern that the possible content of his statement to the jury might require aborting the trial. Although the court did not know what the defendant intended to say, since defendant refused to disclose it, it was not an unreasonable apprehension for the court to assume that its content might well be impermissible. It was obviously reasonable for the court to insist that defendant initially make his statement outside the hearing of the jury. It was obviously reasonable for the court to request that defendant promise to refrain from making any statement when the jury returned. The written record does

not, of course, reflect the defendant's tone of voice or demeanor in addressing the court, but it leaves little doubt of defendant's recalcitrant intent to make his statement, or to attempt to do so, without the court's permission. Under these circumstances, we hold that defendant's refusal to promise to remain silent constituted a waiver of his right to be present or to be free of restraints.

The remaining question, then, is whether the trial court exceeded sound discretion in the particular restraints imposed upon defendant. The touchstone to resolving this sensitive issue should be to use the least coercive restraint reasonable under the circumstances in achieving the necessary result. Messrs. Norman Dorsen and Leon Friedman express it in their book, Disorder in the Court, Report of Association of Bar of City of New York, Special Committee on Courtroom Conduct, p. 95:

"* * * [T]he trial judge, with ample discretion to discourage and punish courtroom disruption, should carefully tailor his reaction to the particular incident before him * * *. * * * [H]e should employ 'a gradually escalating series of responses.' " (Citing In re Michael, 326 U. S. 224, 227, 66 S. Ct. 78, 79, 90 L. ed. 2d 30, 33 [1945], quoting Anderson v. Dunn, 19 U. S. [6 Wheat.] 204, 231, 5 L. ed. 242, 248 [1821].)

Our own Rule 26.03, Rules of Criminal Procedure, provides that a defendant shall be considered to waive his right to be present if after warning he engages in conduct which is such as to justify his being excluded from the courtroom because it tends to interrupt the orderly procedure of the court and the due course of the trial. The rule also provides that as an alternative to exclusion, the court may use all such methods of restraint as will ensure the orderly procedure of the court and the due course of the trial. Subd. 2 of the rule, which is the same as § 4.1 (1), A. B. A. Standards Relating to Trial by Jury (Approved Draft, 1968), provides in part that defendants and witnesses shall not be subjected to physical restraint while in court unless the trial

judge has found such restraint reasonably necessary to maintain order, and that if the trial judge orders such restraint he shall enter into the record of the case the reasons therefor and shall on request of the defendant instruct the jurors that such restraint is not to be considered in assessing the proof and determining guilt.

We think the trial court, in stating the options open to defendant, undertook to minimize the sanctions it would impose on the defendant. Defendant argues that binding and gagging were not as preferable as removal, but defendant could have opted for removal. Before he was presented to the jury wearing restraints, defendant was told he had three choices: restraint, removal, or keeping quiet; but he refused to select among these three. Thus, the defendant held the key to any of the other alternatives in his own pocket.

We nevertheless would discourage the option of gagging and binding of a defendant in most cases. The United States Supreme Court in Allen stated in dicta that binding and gagging is constitutionally permissible under appropriate circumstances, but said:

"* * * [E]ven to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint. It is in part because of these inherent disadvantages and limitations in this method of dealing with disorderly defendants that we decline to hold with the Court of Appeals that a defendant cannot under any possible circumstances be deprived of his right to be present at trial. However, in some

situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here." 397 U. S. 344, 90 S. Ct. 1061, 25 L. ed. 2d 359.

Accordingly, under the circumstances of this case, the trial court did not abuse its discretion by ordering that the defendant be bound and gagged.

■ Defendant's second claim of unfairness of the trial is of less moment. Following the testimony of the complaining witness, defendant's bail was revoked entirely for the period of a noon recess and then reinstated at a higher amount when the court reconvened for the afternoon session. The record does not show that defendant's ability to obtain a fair trial was in any way prejudiced, and, in any event, the trial court did not abuse its discretion in raising the bail figure. The incident occurred when the prosecutrix had completed her testimony on direct examination. Whereas the defendant might previously have hoped that the victim's change of residence to another state would prevent her appearance, he no longer could look forward to that possibility. He might at that point in the trial have given more serious consideration to fleeing the jurisdiction of the court, just as did the defendant in State v. Utecht, 228 Minn. 44, 36 N. W. 2d 126 (1949), and thus the trial court's order was not an abuse of discretion.

The issue, in any event, is moot. As we said in State v. Castle, 260 Minn. 293, 295, 109 N. W. 2d 593, 595 (1961) :

"Defendant cannot now [on application for a writ of coram nobis] make the claim that excessive bail was demanded. If excessive bail was demanded, he should have taken action at the time. It is too late after conviction to attack the amount of bail that is required for defendant's release pending trial."

If a defendant raises the matter of his bail in this court by way of writ of mandamus or other extraordinary remedy at the time it is revoked or raised to a higher figure, this court is in a posi-

tion to provide appropriate relief. After conviction it is not clear what appropriate relief could be granted, and absent a showing that the bail requirements interfered in some way with the defendant's ability to obtain a fair trial, the issue is moot.

Affirmed.

ROGOSHESKE, JUSTICE (dissenting).

I would grant defendant a new trial because of the immeasurable, inerasable, and necessarily prejudicial impact of his bound-and-gagged appearance before the jury. Gagging and binding defendant under the circumstances was, in my opinion, an excessive remedy—especially where the jury must have been utterly perplexed as to the reason for such restraints. The fact that defendant was given a choice does not eliminate judicial responsibility for the sanction imposed.

But more than that, I would hold that gagging a defendant is so inhumane as to be out of place in a court of justice and therefore not an available remedy. Expulsion of defendant from the courtroom is an approved, readily available, and totally adequate remedy in every type of disruption reported or imaginable by those who have studied the problem. See, e. g., Dorsen and Friedman, Disorder in the Court, Report of Association of Bar of City of New York, Special Committee on Courtroom Conduct. Finally, I believe that after defendant's removal reasonable efforts should have been made to enable him to at least hear the proceedings at the place of his confinement.