Clarence Marcel **GAMMAGE**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00096–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 13, 1982.

Rehearing Denied Feb. 10, 1982.

Discretionary Review Refused
May 19, 1982.

Alfredo Saenz, San Antonio, for appellant.

Alger H. Kendall, Jr., Stella Saxon, Karnes City, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

## OPINION

CANTU, Justice.

Appellant was convicted of attempted capital murder. Trial was to a jury with punishment being assessed at seventy-five (75) years' confinement in the Texas Department of Corrections.

The sufficiency of the evidence is not questioned. Only three grounds of error are raised on appeal, all addressing trial court error in abusing its discretion. A brief recitation of the facts is necessary in order to address the error complained of.

The instant case arose out of an incident occurring on September 8, 1978, when a small red-orange car bearing California plates was observed parked on Preston Street in Pleasanton, in Atascosa County. The car was seen parked at different times at various locations, arousing the suspicions of an insurance agent who observed two black men in the automobile. Later, the same automobile was seen parked on Preston Street with the license plates having been removed.

Pleasanton Police Chief Bill Dean and Police Sergeant Lester F. Fuller were dispatched to the scene to investigate. As they exited their patrol car and approached the small car from behind, they saw appellant's head appear from the driver's side window and they observed a pistol being aimed at them. The officers were wearing full dress uniforms and were carrying service revolvers. As the officers retreated with their hands in the air, in response to verbal orders given by appellant, Fuller was shot in the chest at very close range. A high speed chase ensued with appellant driving and his brother firing shots at the pursuing officers. Some thirty miles from Pleasanton, in Live Oak County, at a roadblock, appellant brought the car to a stop and both were apprehended and placed under arrest.

Appellant and his brother, Elston Donnell Gammage, were each charged by an Atascosa County grand jury in two separate indictments with attempted capital murder, and in another indictment with resisting arrest or search by use of a deadly weapon, all arising out of the same criminal escapade. The trial court ordered the cases severed as to the offense charged but mandated a joint trial of the two co-defendants for the offenses. Trial on the instant case addressed the first incident, giving rise to attempted capital murder in the criminal escapade.

The trial was transferred to Karnes County upon the sustaining of a joint motion for change of venue. At the close of the State's case the jury returned verdicts acquitting the co-defendant and convicting appellant of attempted capital murder, as charged in the indictment.

In his first ground of error appellant alleges that the trial court erred in trying him while handcuffed before the jury. Trial on the merits began with jury selection on January 8, 1979, but at a pretrial hearing on January 4, 1979, the State had obtained a hearing on its motion to have appellant and his brother tried while under physical restraints. The motion was heard in Karnes County where appellant was being housed when not in the Nueces County jail. By this time, appellant and his brother had been away from the Atascosa and Karnes County jails almost twelve weeks.

In support of its motion the State offered the testimony of Sheriff Edwin Jalufka of Karnes County, who testified that he preferred to have both co-defendants under physical restraints throughout the trial because they were more dangerous than any other prisoners he has ever had. He based his opinion of dangerousness on the facts giving rise to the case being tried. He admittedly knew nothing about the criminal history of either but concluded that each had a bad temper because they had complained about the food being served at the Karnes County jail. The sheriff testified that he was not aware of any threats having been made by either appellant or his brother while they were being detained at the Karnes County jail. However, he had been told of an alleged escape attempt involving the co-defendants while they were being held at the Atascosa County jail.

The sheriff indicated that he planned to have four or five deputies, in addition to himself, assigned to the joint trial for security. While Sheriff Jalufka had no personal knowledge of any of the misdeeds attributed to appellant and his brother, he unequivocally testified that neither co-defendant had misbehaved while in his custody. While the testimony presented to the trial court consisted primarily of hearsay evidence several times removed, the trial court had heard other evidence relevant to the motion at some of the earlier pretrial hearings.

On October 13, 1978, a motion filed by the State seeking transfer of appellant and his brother to another jail was heard by the trial court. At that hearing Tommy Williams, the Sheriff of Atascosa County, testified that his jail was undergoing repair work and was an unsatisfactory security risk in handling prisoners charged with the type of offenses lodged against appellant and his brother. According to the sheriff only one person was assigned to work the jail at night as a dispatcher on the first floor, and he could not provide surveillance on the third floor of the jail where appellant, his brother, and seven other prisoners were housed in a ten-man cell.

The sheriff testified that two or three days before the hearing to transfer, a newly dug hole had been discovered in the wall of the holding tank in which appellant and the other eight prisoners were being held. No evidence was presented bearing on who the perpetrators of the escape attempt were. The sheriff presumed that some or all of the prisoners were responsible.

No threats about escape were ever made by appellant or his brother in the presence of the sheriff. However, the sheriff related that his dispatcher had overheard threats of escape made by prisoners on the third floor. According to the sheriff, informants had told him that appellant and his brother had indicated their intention to escape.[1]

A few days after appellant and his brother were first lodged in the Atascosa County jail a surprise inspection of the jail had revealed several homemade knives and at least one factory-made knife. The sheriff admitted that the jail population was regularly turned over and that no opportunity existed for inspecting the premises prior to placing new prisoners in the cells. The record does not reveal when the knives were obtained.

Although the third floor of the jail contained prisoners charged with murder, aggravated robbery, aggravated assault and other violent crimes, only appellant, his brother, and an extradition detainee were singled out for treatment as dangerous prisoners requiring transfer to a more secure jail. The three were subsequently transferred to the Nueces County jail. Thereafter, appellant and his brother were regularly transferred back and forth from the Nueces County jail to the Karnes County jail as needed for pretrial hearings. During the various lengthy pretrial hearings held in Atascosa County and in Karnes County, neither appellant nor his brother ever acted in any manner evidencing a need for restraints.

At one of the hearings the sheriff complained about appellant's refusing to be in court wearing leg irons.[2] On another occasion the sheriff complained that appellant and his brother had become uncooperative when one of his deputies failed to wake them up in time to dress and prepare for court appearance. The sheriff admitted to the court that the fault was his in not awakening appellant until 8:30 a. m. for a 9:00 o'clock court appearance.

The record reflects that appellant and his brother periodically attended hearings from shortly after their arrest on September 8, 1978, until January 8, 1979, when trial on the merits began, without ever causing any disruption of the court proceedings or in any manner presenting a security problem.

Counsel for appellant strenuously objected to having appellant tried under restraints. The objections were reurged at various stages of the trial and the trial court eventually agreed to note counsel's continuing objection.

The apprehensive trial court declined the State's demand for leg irons but required both defendants to be tried wearing hand-

---

1. No mention was made of the reliability of the informants and we presume they must have been inmates. Nor was any attempt made by the trial court to interrogate *in camera* the undisclosed informants to ascertain the validity of the accusation. *Compare State v. Moore,*

110 Ariz. 404, 519 P.2d 1145 (1974) *cert. denied,* 419 U.S. 871, 95 S.Ct. 131, 42 L.Ed.2d 110.

2. We are not told whether the leg irons were to be used only while being transported from the jail to the courtroom or whether appellant objected to their use in the courtroom.

cuffs. The trial court stipulated that the restraints would be visible to the jury and acknowledged that they would be prejudicial.

The record reflects that the Sheriff of Atascosa County was deeply concerned with the condition of his jail which was being repaired by having its windows sealed and bricked in. The description of the jail indicates the structure to be old and inadequate. A shortage of manpower is also evident from his testimony.

On the other hand, the Sheriff of Karnes County simply overreacted to the concern exhibited by the Sheriff of Atascosa County without independently ascertaining whether a problem existed some twelve weeks later.

The cautious trial court was outwardly concerned about the need for physical restraints and attempted to mitigate the prejudice by declining to require leg irons and restraining belts. In addition, he allowed both defendants to dress in civilian clothing while in court. The decision to require restraints was not immediately arrived at, the trial court instead taking the matter under advisement. However, once the decision was made the trial court committed itself to full implementation of the order.

The State argues that appellant was not unduly prejudiced because only handcuffs were used during the trial, he was nicely dressed in street clothes and no undue emphasis was placed on the handcuffs. Additionally, during oral argument before this court, the State intimated that appellant is in no position to claim prejudice because the co-defendant, also tried in handcuffs, was acquitted by the jury, thereby providing proof positive that the restraints produced no negative influences upon the jury's deliberations.

We disagree for reasons herein enumerated.

■ Among the most precious rights afforded an accused is the right to be tried before an impartial jury with the presumption of innocence fully intact and free of prejudice. Intimately interwoven into the foregoing rights is the proposition that no accused should ever be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of "exceptional circumstances" or a "manifest need" for such restraints. *Gray v. State*, 99 Tex.Crim.R. 305, 268 S.W. 941 (1924); *Rainey v. State*, 20 Tex.App. 455 (1886).

The removal of physical restraints prior to a defendant's appearing before the jury is also desirable to assure that "every defendant is ... brought before the court with the appearance, dignity and self-respect of a free and innocent man." *Kennedy v. Cardwell*, 487 F.2d 101, 104 (6th Cir. 1973).

In recognizing that an accused has a right to be free from physical restraints while being tried, the courts have referred to several detrimental effects which result from the use of such restraints.

Initially, the courts have recognized that physical restraints on an accused tend to prejudice the jury against the accused and suggest to the jury that the trial judge, by ordering or permitting the use of such restraints, has thereby expressed the opinion that the accused is a dangerous person and is not to be trusted. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Mouton v. State*, 155 Tex.Crim.R. 450, 235 S.W.2d 645 (1950); *Gray v. State, supra; Zunago v. State*, 63 Tex.Crim.R. 58, 138 S.W. 713 (1911); *Rainey v. State, supra,* at 472 *citing State v. Kring*, 64 Mo. 591. Secondly, the courts have recognized that the use of physical restraints on the accused during the trial tends to interfere with his thought processes, the use of his faculties, and his ability to communicate with counsel. *Illinois v. Allen*, 397 U.S., at 344, 90 S.Ct., at 1061, 25 L.Ed.2d, at 359; *Rainey v. State, supra.* Finally, the courts have recognized that the use of physical restraints on an accused during the trial constitutes an affront to the dignity of judicial proceeding. *Illinois v. Allen*, 397 U.S., at 344, 90 S.Ct., at 1061, 25 L.Ed.2d, at 359.

In recognizing that "exceptional circumstances" or "manifest need" can override an

**314**

accused's right to be tried free from physical restraints, the courts have alluded to those situations in which an accused has expressed his intention to escape,[3] has made threats of physical violence,[4] has resisted being brought to court,[5] has repeatedly interrupted the court proceedings,[6] has attempted to leave the courtroom,[7] has assaulted persons in court,[8] has persisted in unruly conduct while in court,[9] or has engaged in or threatened other nonconforming conduct.[10]

■ But the threats or the acts must be real and not merely speculative. Before a trial court is authorized in ordering the physical restraint of an accused on trial before a jury, he should conduct a hearing outside the presence of the jury and include his reasons for taking extreme measures as a part of the record. *Kennedy v. Cardwell*, 487 F.2d 101 (6th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310

(1974); *Woodards v. Cardwell*, 430 F.2d 978 (6th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977); *Moore v. State*, 535 S.W.2d 357 (Tex.Crim. App.1976); *Thompson v. State*, 514 S.W.2d 275 (Tex.Cr.App.1974); *Walthall v. State*, 505 S.W.2d 898 (Tex.Crim.App.1974); *Gray v. State, supra; People v. Duran*, 16 Cal.3d 282, 127 Cal.Rptr. 618, 545 P.2d 1322 (1976); *See also* American Bar Association Standards Relating to the Administration of Criminal Justice, in § 5.3(b) of "The Function of the Trial Judge" and in § 4.1(c) of "Trial by Jury."

■ The decision to use physical restraints must be made by the trial judge on a case-by-case basis and the use of such restraints will necessitate reversal only where the decision constitutes an abuse of discretion. *Illinois v. Allen, supra; Morris*

3. *Patterson v. Estelle*, 494 F.2d 37 (5th Cir. 1974), *cert. denied*, 419 U.S. 871, 95 S.Ct. 130, 42 L.Ed.2d 110; *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978); *Davis v. State*, 505 S.W.2d 800 (Tex.Cr.App. 1974); *Mouton v. State*, 155 Tex.Cr.R. 450, 235 S.W.2d 645 (1950); *Gray v. State*, 99 Tex.Cr.R. 305, 268 S.W. 941 (1924); *State v. Moore*, 110 Ariz. 404, 519 P.2d 1145 (1974), *cert. denied*, 419 U.S. 871, 95 S.Ct. 131, 42 L.Ed.2d 110; *People v. Chacon*, 69 Cal.2d 765, 73 Cal.Rptr. 10, 447 P.2d 106 (1968); *People v. Burwell*, 44 Cal.2d 16, 279 P.2d 744 (1955); *People v. Kimball*, 5 Cal.2d 608, 55 P.2d 483 (1936); *People v. Condley*, 69 Cal.App.3d 999, 138 Cal.Rptr. 515 (1977), *cert. denied*, 434 U.S. 988, 98 S.Ct. 619, 54 L.Ed.2d 483; *People v. Burnett*, 251 Cal. App.2d 651, 59 Cal.Rptr. 652 (1967); *People v. Stabler*, 202 Cal.App.2d 862, 21 Cal.Rptr. 120 (1962); *Hall v. State*, 199 Ind. 592, 159 N.E. 420 (1928); *Tunget v. Commonwealth*, 303 Ky. 834, 198 S.W.2d 785 (1946), *cert. denied*, 331 U.S. 833, 67 S.Ct. 1514, 91 L.Ed. 1847 (1947); *State v. McKay*, 63 Nev. 118, 165 P.2d 389 (1946), *cert. denied*, 329 U.S. 749, 67 S.Ct. 76, 91 L.Ed. 646; *Makley v. State*, 49 Ohio App. 359, 197 N.E. 339 (1934), *error dism'd*, 128 Ohio 571, 192 N.E. 738; *State v. Hanrahan*, 49 S.D. 434, 207 N.W. 224 (1926); *Rivera v. State*, 1 Tenn.Cr. 395, 443 S.W.2d 675 (1969).

4. *Morris v. State*, 382 S.W.2d 259 (Tex.Cr.App. 1964); *People v. Kimball, supra; Dixon v. State*, 27 Md.App. 443, 340 A.2d 396 (1975); *State v. Richards*, 467 S.W.2d 33 (Mo.1971).

5. *People v. Hillery*, 65 Cal.2d 795, 56 Cal.Rptr. 280, 423 P.2d 208 (1967).

6. *Kimithi v. State*, 546 S.W.2d 323 (Tex.Cr.App. 1977); *State v. Martin*, 102 Ariz. 142, 426 P.2d 639 (1967); *State v. Van Bogart*, 85 Ariz. 63, 331 P.2d 597 (1958), *cert. denied*, 359 U.S. 973, 79 S.Ct. 886, 3 L.Ed.2d 838 (1959); *People v. Rogers*, 187 Colo. 128, 528 P.2d 1309 (1974); *State v. Boudoin*, 257 La. 583, 243 So.2d 265 (1971); *People v. Kerridge*, 20 Mich.App. 184, 173 N.W.2d 789 (1969); *State v. Jones*, 311 Minn. 176, 247 N.W.2d 427 (1976); *State v. Johnson*, 499 S.W.2d 371 (Mo.1973); *State v. Richards, supra; State v. McGinnis*, 441 S.W.2d 715 (Mo.1969); *State v. Roscus*, 16 N.J. 415, 109 A.2d 1 (1954).

7. *State v. Johnson, supra; People v. Rittenhouse*, 37 App.Div.2d 866, 325 N.Y.S.2d 90 (1971); *Peters v. State*, 516 P.2d 1372 (Okl.Cr. 1973).

8. *Morris v. State, supra; State v. Richards, supra*.

9. *State v. Roscus, supra; People v. Palermo*, 32 N.Y.2d 222, 344 N.Y.S.2d 874, 298 N.E.2d 61 (1973); *Commonwealth v. Reid*, 123 Pa.Super. 459, 187 A. 263 (1936).

10. *State v. Moore, supra; People v. Kimball, supra; People v. Loomis*, 27 Cal.App.2d 236, 80 P.2d 1012 (1938); *Hall v. State*, 199 Ind. 592, 159 N.E. 420 (1928); *State v. Daniel*, 297 So.2d 417 (La.1974), *aff'd on other grounds*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790.

*v. State*, 382 S.W.2d 259 (Tex.Cr.App.1964); *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976) *cert. denied*, 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977).

In addressing the problem of physically restraining an accused on trial before a jury, the United States Supreme Court in *Illinois v. Allen, supra,* focused on those situations arising in the courtroom giving impetus to a trial judge's use of discretion in resolving the crisis. In doing so it stated:

> It is essential to the proper administration of criminal justice that dignity, order and decorum be the hallmark of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case.

397 U.S., at 343, 90 S.Ct., at 1061, 25 L.Ed.2d, at 359.

\* \* \* \* \* \*

> ... [N]o person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

397 U.S., at 344, 90 S.Ct., at 1061, 25 L.Ed.2d, at 359.

The true danger of subjecting an accused to trial under physical restraint in the presence of a jury lies in the very real probability that the jury will infer that the accused is a violent person disposed to committing crimes of violence, particularly when he is accused of a violent crime. *Illinois v. Allen, supra; Odell v. Hudspeth*, 189 F.2d 300 (10th Cir. 1951); *People v. Duran, supra.*

There are, of course, valid instances giving rise to "exceptional circumstances" and "manifest need" which occur outside of the courtroom, either before or during the trial. Under proper circumstances a trial judge would be justified in taking extreme measures if the facts warranted them. In such cases the trial court must proceed with greater caution because it must in turn rely, not upon how it independently perceives and gauges the problem, but upon an assessment made by someone rarely free from bias, as in the instant case.

■ Although the trial court has greater latitude in assessing the evidence before him, including consideration of information obtained through less than normally reliable sources, he must still temper his decision so as not to unduly emasculate the constitutional right of the accused to his day in court under the presumption of innocence.[11]

■ In the absence of justifiable reasons appearing in the record, the trial court may not resort to physical restraints solely because of the character of the crime charged. We find nothing in the record which occurred before or during the trial suggesting that appellant would behave in a manner requiring such extreme measures. This is particularly true of the period between October 13, 1978, and January 8, 1979.

■ The State's argument that the co-defendant's acquittal is evidence that the jury was not negatively influenced is not persuasive. The record discloses that counsel for both defendants, as well as the State, argued to the jury that the co-defendant's conviction was a foregone conclusion when the second trial for attempted capital murder, then pending, was conducted. The theory argued made it painfully clear to the jury that this case was appellant's case and that an acquittal of the co-defendant would not excuse the co-defendant's conduct on the second charge. Responding to such assurances, the jury did not hesitate to acquit, but this is not to say that they were not affected by the physical restraints.

11. Before a judge should permit a case to proceed under such circumstances he should be very sure of his ground. *Gray v. State*, 268 S.W., at 950.

Cases in which an accused is inadvertently displayed to the jury under physical restraints for short periods are extremely common and such exposures have not necessarily called for reversal in the absence of some showing that prejudice was suffered therefrom. *United States v. Larkin*, 417 F.2d 617 (1st Cir. 1969); *O'Shea v. United States*, 400 F.2d 78 (1st Cir. 1968); *Cline v. State*, 463 S.W.2d 441 (Tex.Cr.App.1971); *Garcia v. State*, 435 S.W.2d 533 (Tex.Cr. App.1968); *Xanthull v. State*, 403 S.W.2d 807 (Tex.Cr.App.1966); *Mouton v. State*, 155 Tex.Crim.R. 450, 235 S.W.2d 645 (1950); *State v. Crockett*, 262 La. 197, 263 So.2d 6 (1972); *Commonwealth v. Parry*, 1 Mass. App. 730, 306 N.E.2d 855 (1974); *Dixon v. State*, 27 Md.App. 443, 340 A.2d 396 (1975); *Rush v. State*, 301 So.2d 297 (Miss.1974); *State v. Crawford*, 539 S.W.2d 633 (Mo. 1976); *Scott v. State*, 88 Nev. 682, 504 P.2d 10 (1972); *State v. Jones*, 130 N.J.Super. 596, 328 A.2d 41 (1974); *State v. Foster*, 83 N.M. 128, 489 P.2d 408 (1971).

Exposure to the jury under physical restraints for the entire trial has inevitably presented the more serious problems. Our Court of Criminal Appeals has characterized it as "an infringement upon the constitutional presumption of innocence." *Moore v. State, supra; Thompson v. State, supra; Walthall v. State, supra.*

In recognizing the legitimate governmental concern for security, the court in *Walthall v. State* stated:

All of this might have been and probably was justification for the handcuffing and the chaining of the appellant on the trip from the jail to the courthouse, but we cannot say that it authorized bringing the appellant into the courtroom so manacled in full view of the jury which was to try him.

505 S.W.2d, at 899.

From the record before us we cannot say that less stringent measures were not readily available to the court. *Cf. Davis v. State*, 505 S.W.2d 800 (Tex.Crim.App.1974), in which the restraining devices were removed from appellant after he had been seated for trial.

Although the Sheriff of Atascosa County characterized appellant as a dangerous prisoner and his jail as inadequate to house one accused of such serious crime, we note the sheriff's expression of concern at the expense of housing appellant and his brother, in his testimony relating to the transfer to a more secure jail. We also note that in *Freeman v. State, supra*, the defendant was convicted of capital murder occurring in Atascosa County, but the same sheriff had no apparent complaint about the security problems inherent in the county jail building.

Unlike the case at bar, in *Freeman* the trial court record noted that the defendant had made actual and direct threats of violence to the sheriff on or very near to the trial date and further evidenced a continuing threat to commit acts of violence. The facts of that case also reflect an actual escape from custody by the defendant.

The facts in the instant case do not reflect an immediate or current necessity such as to support the extreme measures adopted and implemented.[12]

We note also that counsel for both defendants had advised the trial court of an intent to present possibly conflicting defenses. Neither defendant in fact testified

---

**12.** We have examined the record of the hearing held on January 4, 1979, when the trial court took the matter of restraints under advisement and the record of the proceeding held on January 8, 1979, when the order implementing the restraint was entered, and have failed to find a compliance by the trial court in specifically setting out its reasons for the restraints. The most that is reflected by the record is a statement of the court as follows:

I will ask that you be allowed to wear civilian clothes with a coat to lessen any damage that is necessary, but the court feels like that based upon the record in this cause, both in Atascosa County and in Karnes County, and as already a matter of record, and the nature of the charges, that the court will direct that both defendants, that the sheriff will be allowed to keep handcuffs on them, but all other restraints will be removed.

We do not believe that the foregoing statement of reasons complies with the requirements of *Moore v. State, supra.*

and the evidence presented by the defense was negligible at best.

Without expressing an opinion whether appellant or his brother had testimony to present, we are unwilling to believe that the presence of handcuffs had no appreciable effect on their election to not testify. The detrimental effect of such visible physical restraints upon the mental faculties does not escape us. Neither are we willing to believe that the presence of physical restraints had no effect at the punishment phase.

We think it was an abuse of discretion for the court to employ restraints without specifically finding a manifest need, when less drastic security measures would have adequately and reasonably addressed the problem.

■ In view of the action taken by this court herein, we deem it unnecessary to address appellant's remaining grounds of error complaining of the trial court's undue restriction of jury voir dire. Suffice it to mention that the constitutional guarantee of the right to be represented by counsel carries with it the right of counsel to interrogate prospective jurors in such a manner as to effectuate the intelligent exercise of peremptory challenges, but the trial court must retain some discretion in limiting the examination of prospective jurors or some trials would never terminate. *Freeman v. State, supra.*

The judgment is, accordingly, reversed and the cause remanded to the trial court.

BUTTS, Justice, dissenting.

In my view, the record disclosed no abuse of discretion, but, rather, indicates substantial support for the trial court's action.

The majority opinion, in this kind of situation, would seek to bind trial judges with a set of formal rules akin to those imposed by a *Jackson-Denno* hearing.[1] This is not the meaning of the Texas cases, *Gray v. State*, 99 Tex.Crim. 305, 268 S.W.2d 941 (1924) and *Moore v. State*, 535 S.W.2d 357 (Tex.Cr. App.1976), relied upon by the majority. Those cases discuss the standard which the trial court must meet when it permits a defendant to appear handcuffed before a jury. They hold there must appear a clear demonstration of the reasons by the court for such action. Thus, our duty in the appellate review becomes simply to determine whether there was an abuse of discretion after a thorough study of the entire record.

The trial judge here was the same one who heard evidence about the attempted escape from the Atascosa County jail. He was the same judge who ordered the removal of appellant and his co-defendant brother to the Corpus Christi jail for security reasons after an evidentiary hearing. The evidence showed that appellant had made threats of violence and of escape, that two attempts had been made while appellant and his brother were in that jail to dig out through the wall of the 10-man cell where they were confined; that "homemade" and factory made knives and weapons were confiscated from that same cell, and one of the knives was located under appellant's mattress in his bunk; that an informant advised the Sheriff of Atascosa County of the Gammage brothers' plans to escape and threats of violence. This was the trial judge who removed the case to another county on a motion for change of venue. At the hearing to determine whether to permit the restraint of appellant and his co-defendant before the jury, the Sheriff of

---

1. A determination by the trial judge of the voluntariness of a defendant's confession prior to its admission in evidence is a constitutional and statutory requirement, and such determination must distinctly appear in the record. *McKittrick v. State*, 535 S.W.2d 873, 875 (Tex. Cr.App.1976). *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 593 (1964).

See Tex.Code Crim.Pro.Ann. art. 38.22(6) (Vernon 1977) provides, in part:

... If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause ....

Karnes County indicated he and his deputies were apprehensive concerning security in the courtroom. He requested the use of legirons as well as handcuffs and stated that he would position other deputies at the exits and about the courtroom. He expressed concern for the safety of the occupants of the courtroom. In his ruling the trial judge stated,

"Now, and, here again to both defendants, the Court is trying to be as fair as it knows how to be, and the Court is directing the Sheriff, and I will ask that you be allowed to wear civilian clothes with a coat to lessen any damage that is necessary, but the Court feels like that based upon the record in this cause, both in Atascosa County and in Karnes County, and as already a matter of record, and the nature of the charges, that the Court will direct that both Defendants, that the Sheriff will be allowed to keep handcuffs on them, but all other restraints will be removed . . . .

. . . I will ask that when the jury is— when the jury is recessed that the Defendants remain until the jury retires to the jury room and then they will be brought in here for the use of the restroom, or whatever, conference, or otherwise. That the officers be directed to have as little contact with the witnesses or jurors as possible during the progress of this trial."

All courts agree that no justification need be shown by a sheriff for shackling a prisoner between the jail and the courtroom, for this is an accepted security measure. *Moore, supra,* at 358. However, when the jury sees the defendant in handcuffs in the courtroom, "the harm that a defendant suffers is that his constitutional presumption of innocence is thereby infringed." *Moore, supra,* at 358. This is not to say that the procedure may never be practiced.

It becomes necessary to distinguish *Moore, supra.* In the instant case the venue hearing, the escape attempt hearing, and, finally, the hearing to determine whether to permit the procedure, all produced reasons suggesting precautionary measures be taken. In *Moore* there was *no*

*hearing* of any kind, and no reasons ever shown in the record for the extraordinary procedure of displaying the defendant before the jury in handcuffs. Further, when objections were made in that case, they were coupled with a motion to dismiss the panel and draw another panel.

In *Gray, supra,* 268 S.W.2d at 950, it is written:

". . . it is only when the record brings the case clearly within one of the rare exceptions that we would consent for a conviction to stand. Before a judge should permit a case to proceed under such circumstances, he should be very sure of his ground."

Not surprisingly, two of the "rare exceptions" noted in *Gray, supra,* 268 S.W.2d at 949 are "to prevent escape . . ., or to prevent him from injuring bystanders or officers of the court . . . ." Presumably only one of these reasons will suffice.

In another case upon which the majority opinion relies to hold there has been an abuse of discretion in the instant case, *Walthall v. State,* 505 S.W.2d 898 (Tex. Crim.App.1974), the sheriff brought that defendant into the courtroom manacled in full view of the jury which was to try him. But the distinguishing feature of *Walthall* is the sheriff there testified that the defendant had never given him any trouble and had never attempted to escape from him, and the record failed to show that the sheriff feared the defendant would harm himself or another. How different from the instant case.

Whether we agree with the testimony of the Sheriff of Atascosa County and the Sheriff of Karnes County, or whether we believe the Sheriff of Karnes County "overreacted" in stating the need for security, is not the question before this court. The only question is whether the trial court abused its discretion by permitting the trial to proceed with the appellant handcuffed before the jury. The trial court is the domain of the trial judge, and a ruling of abuse of discretion by this court is, and should be, rare.

Finally, the acquittal of appellant's co-defendant also charged with attempted capital murder, and also handcuffed before the jury, cannot be dismissed lightly. The record amply and affirmatively reflects sufficient reasons for the appellant to be viewed by the jurors in handcuffs and the trial court did not abuse its discretion in permitting such action.

Therefore, I dissent, and would affirm the judgment.

### OPINION ON STATE'S MOTION FOR REHEARING

Before ESQUIVEL, BUTTS and CANTU, JJ.

CANTU, Justice.

In a vigorous motion for rehearing the State asks that we reconsider our prior opinion holding that the trial court abused its discretion in ordering appellant to be tried under physical restraints.

The State argues that appellant was tried with his handcuffs covered with a coat and suggests that we should not conclude that the jury saw the restraints on appellant and that he was prejudiced thereby because the appellate court is not in the same position to observe the demeanor of witnesses and the defendants as was the trial court.[1] The State suggests that an appellate court may not arrive at conclusions from merely examining the record and briefs filed on appeal.

We agree that the trial court is in a better position to observe the demeanor of all the parties involved including the jurors and we have relied in large measure upon the findings and rulings of the trial court in arriving at our original conclusion. While the State still insists that no prejudice resulted to appellant from his trial under restraints, we need only refer to the trial court's remarks immediately preceding jury selection.

In an effort to perfect a bill of exception to the court's ruling requiring restraints the following transpired.

(By Mr. Mach, defense attorney)

Q: Now, Sheriff, assume for the moment that they are going to wear handcuffs and leg irons in court. Every person involved in the venire panel called for—to be voir dired for the jury, and every person on the jury will be able to see that, will they not?

A: Yes, sir.

Q: And they will know that they are under close restraint, will they not?

A: Yes, sir.

Q: Do you think that might have some effect on their minds as to guilt or innocence?

(Prosecutor) Mr. Brown: Your Honor, I'm sorry, I'm going to have to object. That question calls for this witness to speculate as to what prospective jurors might or might not think. I don't think he is in a position to say.

The Court: Well, I will sustain the objection by way of comment, counselor, *I think that would be obvious*, you know. (Emphasis supplied.)

At the hearing on appellant's motion for new trial, defense counsel, still complaining of the restraints forced upon appellant, inquired of the Sheriff:

Q: Was he handcuffed at all times during the trial?

A: Yes, sir.

Q: Was the defendant, Marcel Gammage, handcuffed in view of the jury during the trial?

The Court: Counselor, the court would state for the record, the court, as a matter of judicial knowledge, we previously held a hearing on this, and the court will state for the record that the defendant was handcuffed at all times in the presence of the jury. There is no question about that. There is no issue.

Paying deference to the State's test on prejudice, we are still convinced that preju-

---

1. Presumably the State means we are not in a position to view the reactions of the jurors either.

dice was obvious and clearly conceded by the trial court.

The only real issue was whether the State had shown that "exceptional circumstances" or "manifest need" existed at the time of trial requiring the harsh measures undertaken. We have been directed to nothing in the record not previously considered and we are not persuaded that the matter calls for a different result.

We refuse to accept the State's continuing proposition that the acquittal by the jury of the co-defendant demonstrates that the same jury judging both men placed no importance on the handcuffs. The prejudice to appellant was conceded by the trial court. We agree with that conclusion and the State has offered nothing other than conjecture to rebut the prejudice sustained.[2] We are unwilling to declare that the prejudice suffered by appellant was harmless error beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, (1967). The State's motion for rehearing is denied.

BUTTS, J., would grant for reasons in dissenting opinion.

---

**2.** "The burden is upon the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." *Chapman v. California, infra; see also* 1 Wigmore, Evidence, § 21 (3rd ed. 1940).