Reversed and Remanded and Opinion filed July 31, 2007








Reversed and
Remanded and Opinion filed
July 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00352-CR

____________

 

RALPH BOONE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 1004580

 



 

O P I N I O N

Appellant Ralph Boone challenges his conviction for
possession of cocaine on the grounds that the trial court erred in (1)
overruling his Batson challenge and (2) ordering him restrained in
handcuffs for the duration of the trial.  Because we conclude the trial court
committed harmful error by ordering appellant handcuffed during the
proceedings, we reverse and remand for a new trial.








I.  Factual and Procedural Background

On the afternoon of October 20, 2004, appellant was driving
a maroon Buick in a Houston neighborhood notorious to police for narcotics
complaints.  He was stopped by Officer Jason Turrentine of the Houston Police
Department because he and his female passenger were not wearing seatbelts.[1] 
While approaching the vehicle after it pulled over, Turrentine saw appellant
moving around as if he were trying to hide something.  Because appellant was
unable to provide identification and seemed very nervous when Turrentine
questioned him, Turrentine asked appellant to step out of the vehicle.  When
appellant stepped out, Turrentine  noticed a clear plastic bag containing
several beige rocks on the driver=s seat where
appellant had been sitting.  Turrentine=s field test
indicated that the rocks contained cocaine.  Officer Turrentine arrested
appellant and had the car towed to a nearby parking lot.  Pursuant to an
inventory search, Turrentine discovered several items in the front area of the
car, including appellant=s cable bill, a bottle of codeine
prescribed to appellant, a bottle of codeine prescribed to another individual,
and a soda bottle containing a red liquid that later testing revealed to be
codeine.  Turrentine also found a large black bag containing scales,
walkie-talkies, and binoculars in the trunk of the car.

Appellant was charged by complaint with possession of a
controlled substance.  At trial, Turrentine identified appellant and described
the offense.  A police chemist confirmed that the rocks found in the vehicle
contained cocaine.  Appellant did not testify, and the jury found appellant
guilty as charged.  Appellant entered a plea of true to two enhancement
paragraphs, and the trial court sentenced him to twenty-five years= confinement in
the Texas Department of Corrections, Institutional Division.  This appeal
timely followed.








II.  Issues Presented

Appellant presents five issues for our review.  In his
first four issues, appellant contends that the trial court erred in overruling
his challenge to the racial make-up of the jury.  In his fifth issue, appellant
asserts that the trial court violated his due process rights by having him
handcuffed during trial without adequate reason.  Because appellant=s fifth issue is
dispositive of his appeal, we address it first and do not reach his other
complaints.  See Tex. R. App. P. 47.1.

III.  DISCUSSION

A.   Handcuffing Appellant During Proceedings








Prior to voir dire and outside the presence of the jury
panel, appellant=s counsel objected to appellant being
handcuffed during the proceedings.  After a fairly lengthy discourse,[2]
the trial judge, Hon. William Harmon, overruled the objection, stating that he
was concerned that the cane appellant needed to walk could be used as a deadly
weapon.  This concern, coupled with appellant=s previous
convictions and the length of incarceration he was facing in this case, led
Judge Harmon to order appellant shackled in handcuffs for the duration of his
trial.

The United States Supreme Court has recognized that a
criminal defendant has the right to be tried without the use of restraints.  Deck
v. Missouri, 544 U.S. 622, 630B31, 125 S. Ct.
2007, 2013 (2005).  The Supreme Court noted that restraining a defendant
implicates three fundamental legal principles.  Id.  First, our criminal
process presumes the defendant is innocent until proven guilty, and visibly
restraining the defendant infringes upon this presumption.  Id.  Second,
a defendant has a constitutional right to counsel to help secure a meaningful
defense, and physical restraints can interfere with the ability to communicate
with counsel.  Id.  Third, the routine use of physical restraints can
undermine the dignity of the judicial process.  Id.  Thus, as a general
matter, a defendant has a right to be tried without the use of physical
restraints.  Davis v. State 195 S.W. 3d 311, 315  (Tex. App.CHouston [14th
Dist.] 2006, no pet.)(quoting Culverhouse v. State, 755 S.W. 2d S.W.2d
856, 859 (Tex. Crim. App. 1988)).  Shackling should only be used as a last
resort.  Molina v. State, 971 S.W.2d 676, 679 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d).  








The trial court does, however, have discretion to order
restraints when there is a showing of a manifest need or exceptional
circumstances, such as when a defendant poses a threat to himself or others.  Davis,
195 S.W.3d at 315.  When reviewing this issue on appeal, we must determine
whether the trial court abused its discretion and, to assist in this
determination, the record must clearly and affirmatively reflect the reason for
the restraint.  Long v. State, 823 S.W.2d 259, 282 (Tex. Crim. App.
1991) (en banc).  The crime charged or a general concern for courtroom security
are not sufficiently specific reasons to require restraint.  See id. At
283.  Exceptional circumstances warranting the use of restraints have included
situations in which an accused has expressed an intent to escape, made threats
of physical violence, resisted being brought into court, repeatedly interrupted
court proceedings, attempted to leave the courtroom, assaulted persons in
court, behaved in an unruly manner in court, or engaged in or threatened
non-conforming conduct.  Gammage v. State, 630 S.W.2d 309, 313-14 (Tex.
App.CSan Antonio 1982,
pet. ref=d) (citations
omitted). 








In this case, Judge Harmon determined that because
appellant was facing at least twenty-five years in prison if convicted and his
cane could potentially be used as a deadly weapon, appellant posed a threat. 
But nothing in our record reflects any manifest need or exceptional
circumstances warranting the use of restraints.  At the time of his trial,
appellant was a fifty-four year old man with no history of any violent or
assaultive offenses.[3] 
Nothing in our record indicates appellant had expressed any intent to escape,
exhibited any threatening or violent behavior, or disrupted the courtroom
proceedings.  See id.  Although Judge Harmon offered a purportedly
defendant-specific justification in this case, i.e., that he was Aconcerned that the
cane could be used as a deadly weapon,@ this statement
amounts to no more than speculation that a person could conceivably use the
cane in a dangerous manner.  It does not justify Judge Harmon=s order that
appellant remain handcuffed throughout the trial.  First, Athreats or acts
warranting restraint during trial must be real and not merely speculative . . .
.@ Molina,
971 S.W.2d at 680; Gammage, 630 S.W.2d at 314.  Here, appellant
expressed no threat by word or deed.  And tellingly, Judge Harmon allowed
appellant to keep the cane, even though appellant suggested that Athe cane can be
put back.@  We conclude Judge Harmon abused his discretion in
ordering that appellant be handcuffed for the duration of trial.  See  Wiseman
v. State, 223 S.W.3d 45, 50-51 (Tex. App.CHouston [1st
Dist.] 2006, pet. ref=d); Davis, 195 S.W.3d at 316; Grayson
v. State, 192 S.W.3d 790, 792 (Tex. App.CHouston [1st
Dist.] 2006, no pet.); Ramirez v. State, No. 14-05-00435-CR, 2006 WL
2345952, at *3 (Tex. App.CHouston [14th Dist.] Aug. 15, 2006, no
pet.) (mem. op.) (not designated for publication). 

Because this error implicates appellant=s constitutional
rights, we must reverse the judgment unless we determine beyond a reasonable
doubt that the error did not contribute to the conviction.  Tex. R. App. P. 44.2(a); Davis,
195 S.W.3d at 316B17.  AFactors we
consider in conducting this [harm] analysis include the source and nature of
the error, the extent to which the State emphasized it, its probable collateral
implications, the weight the jury would probably give it, and whether declaring
it harmless would encourage its repetition with impunity.@  Davis,
195 S.W.3d at 317.  As beneficiary of the error, the burden falls on the State
to prove that the error was harmless beyond a reasonable doubt.  Id.  

In support of its argument that Judge Harmon=s error was
harmless, the State asserts first that the record does not reflect any jurors
ever saw the handcuffs.  But the prosecutor himself, during the colloquy in
response to appellant=s initial objection to the handcuffs,
stated that the armband of the handcuffs was Aclearly visible.@ Later, during
voir dire but outside the venire panel=s presence,
appellant=s counsel reiterated his concern that veniremembers
could see appellant=s handcuffs, stating, AThe problem with
having him cuffed, because we have jurors milling all over the place, walking
up here.  They=re walking by him, they can see it. . . .@  Finally, after
the State=s first witness testified, appellant=s counsel renewed
his objection: 








Every time [appellant] stands up
for the jury when they enter or walk out of the room, anybody that cares to
look at him can see his handcuffs.  They are obviously visible to this jury and
I don=t know if they=ve seen them or not, but again, I
object to him being shackled and would ask again that they be removed
immediately.

 

Based
on this record, we cannot say that jurors did not see the handcuffs.[4]









The State next argues that appellant has not shown that
being handcuffed during trial affected his ability to communicate with counsel
or affected his mental faculties.  But appellant=s counsel based
his objection to appellant being handcuffed in part because the restraints
prevented appellant from fully participating in his defense.[5] 
Although nothing in our record reflects that writing was the preferred method
of communication between appellant and his trial counsel, a defendant has a
general Aright to
unrestricted access to his lawyer for advice.@  Davis,
195 S.W.3d at 318 (quoting Perry v. Leeke, 488 U.S. 272, 284, 109 S. Ct.
594, 602 (1989)).  We are therefore unconvinced that handcuffing appellant had
no impact effective communication between appellant and his attorney.

          Finally,
the State asserts that the evidence of appellant=s guilt was
overwhelming in this case.  We disagree.  Although Officer Turrentine=s testimony
established several links between appellant and the drugs, we note that
appellant did not own the vehicle in which the drugs were found.  Additionally,
appellant was not the only person in the vehicle when Turrentine discovered the
drugs; a female passenger was sitting next to appellant in the vehicle when
Turrentine initiated the traffic stop.  Under these circumstances, we cannot
say that the handcuffs did not contribute to the jury=s determination of
appellant=s guilt.

In sum, we cannot say, beyond a reasonable doubt, that the
trial court=s abuse of discretion in handcuffing appellant did not
contribute to appellant=s conviction.  We therefore sustain
appellant=s fifth issue.

IV.  Conclusion

Because we sustain appellant=s fifth issue, we do not consider
his Batson issues.  We reverse and remand this case for a new trial.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

Judgment rendered
and Opinion filed July 31, 2007.

Panel consists of
Chief Justice Hedges and Justices Hudson and Guzman.

Publish C Tex. R. App. P. 47.2(b).









[1]  Turrentine also ran the vehicle=s license plates and discovered several outstanding
warrants for the owner=s arrest.  However, the owner was another female who was not the
passenger in the vehicle or otherwise involved in this offense.





[2]  The discussion between the trial court, appellant=s trial counsel, appellant, and the State was as
follows:

[Trial Counsel]: Judge, first, I=d
like to object on the record under Deck v. Missouri to the defendant
being shackled during this trial.

[Judge Harmon]: He=s not
shackled.  He=s got handcuffs.

[Trial Counsel]: He=s got
handcuffs.  Apparently the Court ordered him shackled, but because of his
physical condition, they=re unable to put leg irons on him. . . .

* * *

[Trial Counsel]: He=s a 54-year-old
man.  He=s got a criminal history, but none of his criminal
history involves any violent or assaultive offenses.  All of his arrests are
for drugs, drugs, [sic] burglary and theft.  He=s got no convictions for drugs.  He has got convictions for theft and
burglary.  And based on that, we would object to him being handcuffed during
this trial.

[Judge Harmon]: All right.  Well, you=ve got a cane with you right now, right, Mr. Boone?

[Appellant]: Yes, sir.

* * *

[Prosecutor]: The State intends to offer B make a proffer of evidence, hopefully, when we break for voir dire.  I
believe the defendant B there are some indicators in the Harris County JIMS
system, indications that the defendant has had some incidents at the Harris
County Jail.  I need to get a list of those incidents and basically a key to
translate what those incidents refer to.  I like to put on the record those
incidents that have been documented regarding the defendant over at the Harris
County Jail to prove that he could possibly be a danger here in the courtroom
today.

[Judge Harmon]: Oh, okay.  Because evidently the defendant needs a cane
to assist him walking, and because the Court=s
concern that the cane could be used as a deadly weapon and because of the
defendant=s numerous prior convictions and the fact that he=s looking at 25 years to life in prison if he gets
convicted, the Court is going to allow him to continue to keep his cane, but
because of the Court=s concern about the cane, I=m going to order him to be handcuffed during trial.

He will be positioned in a way where it will be absolutely impossible
for the jury to observe the handcuffs.  As a matter of fact, these are new
handcuffs.  These are black.  These are not traditional silver handcuffs. 
Barely even noticeable to me.  And, so, Mr. Boone, just keep your hands below
the table so the jury cannot see the cuffs.  Put your sleeves over them.





[3]  According to the State, Harris County Jail records
indicate appellant was charged with several counts of misconduct while in jail:
misuse of medication; possession of contraband; manufacturing, possession of an
intoxicant or intoxication; possession of unauthorized clothing, bedding, or
towels; and gambling or possessing of gambling paraphernalia.  None of these
incidents involve any violence, threats of violence, or escape attempts.





[4]  Moreover, we have previously determined that the
inquiry into this issue Agoes beyond what the jury did or did not see.@  Davis, 195 S.W.3d at 317.  





[5]  The record reflects that counsel clarified his
initial objection as follows:

[Trial Counsel]: Before we bring the jury in, I=m also objecting, so the record is clear, on the basis
of the B of the dignity of the court procedure, court process
to handcuff someone while they=re undergoing
trial.  It=s unconstitutional, violates the right to due process
and a fair trial in that he is not able to be a full participant in the trial without
a jury possibly seeing his handcuffs.  When he has to stand up when the jury
comes in and out of the room, they can see his handcuffs.  When you seat the
jury after we finish voir dire, when they walk up here, they can potentially
see his handcuffs, and it doesn=t allow him to
fully participate in the trial and assist in his defense with dignity that he
should be entitled to during his trial.  We object for that reason as well.

[Judge Harmon]: It is impossible for anybody to see B as he appears right now, for anybody to know he=s handcuffed.

[Trial Counsel]: Judge, my objection, though is it=s not necessarily only if the jury can possible see
it.

[Judge Harmon]: That possibility does not exist.

[Trial Counsel]: Well, I think it exists, but even if it didn=t, I still object on the basis that he has a right to
be tried in dignity, and shackling him does not allow him to participate in
that way.

[Judge Harmon]: He=s got on street
clothes, he=s got a cane.  He=s
being tried in a dignified manner.

The objection is overruled.