

# NUMBER 13-10-00353-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**PARKER MONROE SHARP,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

### On appeal from the 148th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

Appellant Parker Monroe Sharp challenges his conviction on one count of continuous sexual abuse of a child and five counts of aggravated sexual assault of a child, first-degree felonies for which he was assessed six life imprisonment terms. *See* TEX. PENAL CODE ANN. §§ 21.02(b), (h), 22.021 (a)(1)(B), (e) (West, Westlaw through 2013 3d

C.S.).   By three issues, appellant argues that:   (1) the trial court erred in failing to conduct a competency hearing; (2) the trial court abused its discretion in shackling appellant and ordering additional security during trial; and (3) the trial court erred in imposing a $10,000 fine for the continuous abuse conviction.   We affirm.

## I. Background[1]

Appellant was indicted on one count of continuous sexual abuse of a child and seven counts of aggravated sexual assault of a child in connection with his alleged abuse of four girls under the age of fourteen.   He pleaded guilty to two counts of aggravated sexual assault and not guilty to the remaining counts.   Those counts were tried to a jury. The trial court directed a verdict of not guilty on two of the counts of aggravated sexual assault.   The jury found appellant guilty of the remaining counts:   one count of continuous sexual abuse of a child and three counts of aggravated sexual assault of a child.   The jury assessed punishment at life imprisonment for the five assault convictions and life imprisonment without parole for the continuous abuse conviction.   *See id.* § 12.32 (a) (West, Westlaw through 2013 3d C.S.) (providing the punishment range for first-degree felonies, in general), § 21.02(h) (providing the punishment range for continuous sexual abuse); TEX. GOV'T CODE ANN. § 508.145(a) (West, Westlaw through 2013 3d C.S.) (providing that persons convicted of continuous sexual abuse of a child are not eligible for parole).   The jury also assessed a $10,000 fine for each count.   The trial court ordered the punishments for the aggravated sexual assault counts, the prison sentences

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.

2

and fines, to run concurrently and the punishment for continuous sexual abuse of a child, the prison sentence and fine, to run consecutive to the assault punishments. This appeal followed.

## II. Competency

By his first issue, appellant argues that the trial court was required to hold a trial on appellant's competency after counsel raised the issue and the court ordered a competency examination.

> At trial, the issue of incompetency must have first been raised by either a party to the case or the trial court. *See* [Act of Apr. 30, 2003, 78th Leg., R.S., ch. 35, § 1, 2003 Tex. Gen. Laws 57, 57–58 (amended 2011) (current version at TEX. CODE CRIM. PROC. ANN. art. 46B.004(a), (b) (West, Westlaw through 2013 3d C.S.)) (allowing either party or the trial court to suggest that the defendant may be incompetent to stand trial)].[2] But regardless of whether a party or the trial court was the one to make such a suggestion, a trial court [is] not authorized to initiate an informal inquiry to determine a defendant's competency unless the evidence of incompetency was "sufficient to raise a bona fide doubt in the mind of the judge whether the defendant [was] legally competent."[3] *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009); *see Gonzales v. State*, 313 S.W.3d 840, 841–42 (Tex. Crim. App. 2010). Assuming that the court harbored a bona fide doubt, then it initiates an informal inquiry to determine if "there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." [Act of Apr. 30, 2003, 78th Leg., R.S., ch. 35, § 1, 2003 Tex. Gen. Laws 57, 58 (current version at TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)]. We have held that the court is "to assay just

---

[2] The current version of section 46B.004 became effective on September 1, 2011, and therefore did not apply at the time of appellant's 2008 offense or 2009 trial. *See* Act of May 24, 2011, 82nd Leg., R.S., ch. 822, §§ 2, 21–22, 2011 Tex. Gen. Laws 1894, 1894–95 (codified at TEX. CODE CRIM. PROC. ANN. art. 46B.004 (West, Westlaw through 2013 3d C.S.)).

[3] The current version of the law does not include the "bona fide doubt" standard, providing instead that

> A suggestion of incompetency is the threshold requirement for an informal inquiry under Subsection (c) and may consist solely of a representation from any credible source that the defendant may be incompetent. A further evidentiary showing is not required to initiate the inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant.

TEX. CODE CRIM. PROC. ANN. Art. 46B.004(c-1).

that evidence tending to show incompetency, putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency."  If the judge finds "some evidence" in the record that "rationally may lead to a conclusion of incompetency[,]" then a trial within a trial should be held on the issue of the defendant's competency.  TEX. CODE CRIM. PROC. ANN. art. 46B.005(b) [(West, Westlaw through 2013 3d C.S.); *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980)].  Thus, the determination of competency is not decided unless the court holds a trial to determine competency, which is authorized only if the court has a bona fide doubt that the defendant is not competent and, after assaying the evidence, it finds some evidence that the defendant is incompetent.  *See Morris v. State*, 301 S.W.3d 281, 287 (Tex. Crim. App. 2009).

. . . .

Article 46B.003(a) states that a person is incompetent to stand trial if the person does not have (1) "sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding" or (2) "a rational as well as factual understanding of the proceedings against the person."  TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) [(West, Westlaw through 2013 3d C.S.)]. . . .  We have stated that the factors experts use in conducting a competency evaluation are also helpful to the fact-finder in determining the broader question of competency.  *See Morris*, 301 S.W.3d at 286 n.10; *see also* TEX. CODE CRIM. PROC. ANN. art. 46B.024 [(West, Westlaw through 2013 3d C.S.)].  These factors include whether a defendant can

> (1) understand the charges against him and the potential consequences of the pending criminal proceedings; (2) disclose to counsel pertinent facts, events, and states of mind; (3) engage in a reasoned choice of legal strategies and options; (4) understand the adversarial nature of criminal proceedings; (5) exhibit appropriate courtroom behavior; and (6) testify.

*Morris*, 301 S.W.3d at 286 n.10.  A person is presumed to be competent, and the burden is on a criminal defendant to prove incompetency by a preponderance of the evidence.  TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) [].

*Ex parte LaHood*, 401 S.W.3d 45, 52–54 (Tex. Crim. App. 2013) (notes, emphases

4

removed). "On appeal[,] the standard of review is whether the trial court abused its discretion by failing to empanel a jury for the purpose of conducting a competency hearing." *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999) (citation omitted).

The following is the only information in the record related to appellant's competency. On March 17, 2009, appellant's initial trial counsel filed a motion suggesting incompetency and requesting an examination by a psychiatrist. The trial court granted the motion for examination on March 19, 2009. No further proceedings were held on the motion, and the record contains no mention of the results of the examination. Appellant's initial counsel filed a motion to withdraw on June 3, 2009, which was granted.

On November 12, 2009, appellant's subsequent trial counsel filed a motion for appointment of an expert. In the motion, counsel asserted that appellant "has suffered three head injuries that may have affected his ability to make reasonable decisions and control inappropriate impulses." As a result, counsel argued, appellant required a mental health expert to investigate his potential insanity defense and to determine whether he can raise his mental health as mitigating evidence. The record contains no report from a mental health expert, and no such expert testified at trial. At trial, appellant did not raise an insanity defense or provide mitigating evidence of his mental health.

Immediately before trial began, appellant's counsel told the trial court he has "spoken to [appellant]" and "believe[d] [appellant]'s mentally competent to make his [guilty] pleas." During the admonishments, counsel asked appellant if he was competent to make his pleas; appellant answered, "Yes, I am." The trial court then questioned

5

appellant as follows:

| | |
|---|---|
| [Court]: | Mr. Sharp, both of your attorneys . . . have just reviewed [the] admonishments; is that correct, sir? |
| [Appellant]: | Yes, Your Honor. |
| [Court]: | You have been in jail over 365 days; is that correct, sir? |
| [Appellant]: | Yes, Your Honor. |
| [Court]: | You have had many, many consultations with your attorneys . . . ; is that correct, sir? |
| [Appellant]: | Yes, Your Honor. |
| [Court]: | So you've discussed possibilities of pleading guilty, the consequences of pleading not guilty, and so on, several times; is that correct, sir? |
| [Appellant]: | Yes, Your Honor. |
| [Court]: | Prior to this morning, when we concluded the day yesterday and prior to this morning assembling here in the courtroom, did your attorneys know that you were entering pleas of guilty to those two counts? |
| [Appellant]: | No.  They did not, Your Honor. |
| [Court]: | Okay.  So that would be — that came as a big surprise to them. |
| [Appellant]: | Yes, Your Honor. |
| [Court]: | It came as a surprise, I would say, also, to the Court and to the State . . . . |

The trial court accepted appellant's guilty pleas and found that he made them knowingly, intelligently, and voluntarily.

Assuming without deciding that appellant did not waive the competency question, *see Salahud-din v. State*, 206 S.W.3d 203, 208 (Tex. App.—Corpus Christi 2006, pet.

6

ref'd) ("Salahud-din forfeited any purported error with regard to these psychological evaluations because he failed to object to the trial court's proceeding to trial."), we believe the trial court did not abuse its discretion on this issue—under the standard applicable at the time of appellant's trial,[4] there were insufficient facts in the record compelling even an informal inquiry. The motion suggesting incompetency filed by appellant's initial counsel contained no facts supporting counsel's concern over appellant's competency. Although an examination was ordered by the trial court, no report from the examining doctor appears in the record. The only facts arguably related to appellant's competency in the record are: (1) in subsequent counsel's pretrial motion for appointment of an expert, the allegation that appellant has suffered numerous head injuries that may have impaired his impulse control; and (2) in appellant's last-minute, surprise decision to plead guilty. But these facts have no bearing on appellant's ability to consult with his attorneys or understand the proceedings. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a); *Morris*, 301 S.W.3d at 286 n.10. The bulk of the relevant evidence in the record shows that appellant was competent: during the guilty plea admonishments, defense counsel asserted that, based on his meetings with appellant, he believed appellant is competent; appellant testified that he was competent; and during its acceptance of appellant's guilty pleas, the trial court confirmed that appellant met with his attorneys regularly and often.

In short, we cannot conclude that the evidence raised a bona fide doubt that appellant lacked the competence to stand trial. *See Ex parte LaHood*, 401 S.W.3d at 52; *Montoya*, 291 S.W.3d at 425. Thus, the trial court was not obligated to hold an

---

[4] *See supra* notes 2, 3.

informal inquiry or a full competency trial and did not abuse its discretion in this regard. *See Moore*, 999 S.W.2d at 393.   Appellant's first issue is overruled.

### III.   Shackles and Extra Security

By his second issue, appellant argues that the trial court abused its discretion in allowing appellant to remain shackled during trial and allowing security personnel to sit behind appellant through the trial.   Appellant made no objection to the presence of the security personnel, so that argument is not preserved for our review.   *See* TEX. R. APP. P. 33.1(a).   As to appellant's argument regarding the shackles, we disagree that the trial court abused its discretion in authorizing the restraints, and even if it had, appellant cannot show he was harmed.

The court of criminal appeals has recently summarized the law on shackles as follows:

> The harm a defendant suffers when the jury sees him in handcuffs or shackles is the infringement of his constitutional presumption of innocence.   *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). All efforts should be taken to prevent the jury from seeing the defendant in shackles, except when there has been a showing of exceptional circumstances or a manifest need for such restraint.   *Id.*   It is within the discretion of the trial judge as to whether a defendant shall be tried in shackles.   *Id.*; *Cooks v. State*, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992).   Even if an abuse of discretion exists, reversal may not be required if such abuse was harmless.   [*Cooks*, 844 S.W.2d at 722].   Absent evidence that the jury actually saw the shackles, we will not conclude that the defendant has been harmed.   [*Id.*]

*Chanthakoummane v. State*, No. AP-75794, 2010 WL 1696789, at *9 (Tex. Crim. App. Apr. 28, 2010) (not designated for publication); *see Simms v. State*, 127 S.W.3d 924, 927 (Tex. App.—Corpus Christi 2004, pet. ref'd)

"'Before a trial court is authorized in ordering the physical restraint of an accused

8

on trial before a jury, [it] should conduct a hearing outside the presence of the jury . . . .'" *Simms*, 127 S.W.3d at 928 (quoting *Gammage v. State*, 630 S.W.2d 309, 314 (Tex. App.—San Antonio 1982, pet ref'd)). The record must clearly and affirmatively reflect the trial court's reasons for allowing the defendant to be restrained. *Id.* (citing *Long*, 823 S.W.2d at 282; *Cooks*, 844 S.W.2d at 722). "However, even if an abuse of discretion in authorizing restraint exists, 'reversal may not be called for if such abuse was harmless.'" *Id.* (quoting *Cooks*, 844 S.W.2d at 722).

The State does not dispute that at appellant's trial, he and the jury entered the courtroom at the same time and that appellant was shackled, i.e., that appellant was in shackles in the presence of the jury. The proceedings began and continued through the State's examination of its first witness. For reasons unclear from the record at this point, the trial court ordered the jury to exit the courtroom during the testimony of the first witness. The trial court conferred with counsel off-the-record and then briefly recessed. The trial court then called each juror into the courtroom individually and asked if they witnessed anything unusual about the defendant or whether anything had drawn their attention to appellant. Each juror answered that they had not noticed anything unusual. The trial court then made the following statements:

> Let me say, now, outside the presence of the jury, that the examination that I just conducted on the record individually of the panel members was necessary because of two issues that arose. The first issue had to do with whether or not — defense counsel had a concern whether or not the members of the panel, some members of the panel might have viewed the defendant in shackles. It is clear to the Court, based on the answers of the panel members, that they did not. . . .

> . . . .

9

. . . The next — Court next wishes to — will now address the basis of the defendant's motion for mistrial based on the possibility that the defendant may have been viewed in shackles in the courtroom. The record cannot capture the setup of this courtroom. It is circular. Defense counsel sit in a semicircle, the jury sits in a box in a semicircle. The bench and the court reporter and the clerk sits [sic] in another semicircle, and altogether the configuration is a circle.

The — each panel member was examined, asked questions about whether or not they viewed the defendant upon their return into the courtroom, and as they made their way back to their chairs and into the jury box. Without exception, all testified that they do not even recall looking in the direction of the defendant, that — and to other questions asked of the panel members, none of them responded that there was — that there was anything specific or unusual that drew their attention to the defendant.

Finally, when defense counsel inquired about whether appellant would remain shackled throughout the trial, the prosecutor responded that appellant was a "suicide risk" and the security personnel stated that the shackles were necessary.

In light of the foregoing, we cannot conclude that the trial court abused its discretion in allowing appellant to remain shackled during trial. The record clearly reflects the trial court's reasons: (1) none of the jurors had seen the shackles; (2) the configuration of the courtroom prevented the jurors from seeing the shackles; and (3) appellant posed a risk of harm to himself and the shackles were therefore a necessary security measure. *See Simms*, 127 S.W.3d at 928. Even assuming the trial court did abuse its discretion, appellant cannot show he was harmed. There is no evidence in the record that the jury ever saw the shackles. *See Cooks*, 844 S.W.2d at 722–23.

Appellant's second issue is overruled.

## IV. Fine

By his third issue, appellant challenges the $10,000 fine assessed for the

continuous sexual abuse of a child count, arguing that the provision of the penal code setting out punishment for this offense does not specifically provide for the assessment of a fine. *See* TEX. PENAL CODE ANN. § 21.02(h). However, appellant made no objection to this fine at the punishment hearing or when his sentence was pronounced. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) ("A sentencing issue may be preserved by objecting at the punishment hearing, or when the sentence is pronounced."); *see also Banal v. State*, No. 08-11-00032-CR, 2012 WL 6681946, at *6 (Tex. App.—El Paso Dec. 21, 2012, no pet.) (mem. op., not designated for publication) (holding that the appellant failed to preserve any error with regard to his fine where he did not timely object). This argument is therefore not preserved for our review. *See* TEX. R. APP. P. 33.1(a). We overrule appellant's third issue.

## V.  Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of April, 2014.

11